# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                              No. 07-4026

DAVON TATE,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(1:06-cr-00243-AMD)

Argued: January 30, 2008

Decided: May 6, 2008

Before NIEMEYER, MOTZ, and DUNCAN, Circuit Judges.

Vacated and remanded by published opinion. Judge Niemeyer wrote
the opinion, in which Judge Motz and Judge Duncan joined.

## COUNSEL

**ARGUED:** Martin Gregory Bahl, OFFICE OF THE FEDERAL
PUBLIC DEFENDER, Baltimore, Maryland, for Appellant. Debra L.
Dwyer, Assistant United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON
BRIEF:** James Wyda, Federal Public Defender, Joseph L. Evans,
Assistant Federal Public Defender, OFFICE OF THE FEDERAL
PUBLIC DEFENDER, Baltimore, Maryland, for Appellant. Rod J.

Rosenstein, United States Attorney, Baltimore, Maryland, for Appellee.

***

**OPINION**

NIEMEYER, Circuit Judge:

This appeal raises the question of whether Davon Tate made the "substantial preliminary showing" under *Franks v. Delaware*, 438 U.S. 154 (1978), that is required for him to be entitled to an evidentiary hearing challenging the integrity of an affidavit submitted to support the issuance of a search warrant for his residence.

On December 16, 2005, Agent Charles Manners of the Baltimore City Police Department applied for and obtained a warrant to search Tate's residence for drugs and related items based on Agent Manners' prior investigation of Tate's trash. Upon executing the warrant, police officers recovered a firearm from Tate's bedroom, and Tate was charged with possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g). Tate pleaded guilty to the charge, and the district court sentenced him to 78-months' imprisonment. As a part of his plea, Tate reserved his right to appeal the district court's denial of his motion to suppress and to have a *Franks* hearing challenging Agent Manners' affidavit in support of the search warrant.

In his motion, Tate asserted that Agent Manners wrote his affidavit in support of the search warrant with the purpose of intentionally misleading the state judge who issued the warrant, by deliberately *omitting* facts about the location of the trash that Agent Manners searched. Tate claimed that his trash had not been abandoned and that Agent Manners' investigation must have been conducted within Tate's fenced backyard in an unconstitutional manner. The district court denied Tate's request for a *Franks* hearing and his motion to suppress, on the ground that even if facts were omitted, Agent Manners' affirmative statements in the affidavit were "literally true."

Because we conclude that Tate made the "substantial preliminary showing" required by *Franks*, we vacate the judgment and remand to the district court for a *Franks* hearing.

## I

On December 16, 2005, Agent Charles Manners of the Baltimore City Police Department applied for and obtained a search warrant for Tate's residence at 709 North Longwood Street in Baltimore, Maryland. The warrant authorized a search for and seizure of drugs and related paraphernalia, as well as guns and other specified items.

To obtain the search warrant, Agent Manners submitted an affidavit to a Baltimore City Circuit Court judge, which contained three substantive sections. First, the affidavit contained a short description of Agent Manners' general knowledge of drug activity in the 700 block of North Longwood Street and at Tate's residence in particular. Second, it recited the results of a criminal records check on Tate, which revealed numerous past drug and other criminal incidents in which Tate had been involved. And third — the portion that is at issue in this case — it described a trash investigation that Agent Manners conducted at Tate's residence the day before. On this subject, the affidavit stated in full:

> On December 15, 2005, your affiant conducted a trash investigation from 709 North Longwood Street. During the trash investigation, *your affiant retrieved (2) two black trash bags, which were easily accessible from the rear yard of 709 North Longwood Street*. Recovered from one trash bag was (7) seven zip lock bags containing plant residue suspected marijuana and a piece of printed mail listing 709 North Longwood Street as the address of residence. Furthermore, located in the trash bag were cigar tobacco and hollowed out cigar shells. Your affiant [through] training and experience knows that marijuana users often hollow out cigar shells, discard the cigar tobacco and fill the cigar shell with marijuana, a controlled dangerous substance of a schedule I category.

(Emphasis added). Based on Agent Manners' affidavit, the state judge issued the search warrant for Tate's residence.

When the search warrant was executed on December 20, 2005, police officers recovered a firearm from Tate's bedroom, which formed the basis for the charges in this case.

After Tate was indicted, he filed a motion to suppress the evidence obtained pursuant to the search, particularly the firearm recovered from his bedroom, but also statements that he made to officers who had executed the search warrant, challenging in particular the affidavit submitted to procure the search warrant. Tate argued that the portion of the affidavit regarding the investigation of Tate's trash was constructed intentionally to mislead the state judge into assuming that the trash investigation had been conducted legally, even though, as Tate alleges, the trash bags had been taken by means of a trespass into Tate's fenced backyard, resulting in an unconstitutional search. Tate asserted in particular that Agent Manners' statement that the trash bags were "easily accessible from the rear yard" was misleading because it was intentionally designed to hide from the judge the fact that the officer had obtained the trash bags by trespassing onto Tate's property and that the trash bags had not been abandoned for trash pick-up, as required for a trash search to be constitutional. *See California v. Greenwood*, 486 U.S. 35, 40-42 (1988) (requiring trash to be abandoned for collection outside the curtilage of the home in order for an officer's search through it to be constitutional).

To support his request for an evidentiary hearing under *Franks v. Delaware* on his motion to suppress, Tate proffered the following facts to the district court.

*First*, he submitted a letter from the Division Chief of the Baltimore Department of Public Works' Bureau of Solid Waste, indicating that during the relevant time, trash collection for 709 North Longwood Street occurred on Wednesdays and Saturdays. The date Agent Manners searched Tate's trash, December 15, 2005, was a Thursday, two days before the next pick-up.

*Second*, he submitted the affidavit of Dominic Gaymon, who lived with Tate and his mother at 709 North Longwood Street during the relevant period. Gaymon corroborated the assertion that Thursday, the day of Agent Manners' search, was not a trash-collection day. He also stated that it was his responsibility to place trash out for collection, and that, other than on trash-collection days, he routinely kept the trash in a covered plastic garbage container by the home's back steps at the rear door of the residence, which was away from the alley where the trash was collected and away from any public area. He also

stated that the rear yard was protected by a fence with a gate that was always locked.

*Third*, Tate submitted an affidavit from a defense investigator who verified that the rear yard of Tate's residence was fenced and that, when the garbage container was at the rear steps near the back door of the home, the container was not accessible to a nonresident unless that person were to go through the gate or over the fence and into the yard.

*Fourth*, he submitted a number of photographs of the rear yard and back steps of the residence, depicting the locked gate, the yard, and the area where the trash was kept.

*Fifth* and finally, he submitted a copy of another search warrant affidavit that Agent Manners had submitted two months earlier in an unrelated case, in which Agent Manners described another trash investigation he had conducted. In that affidavit, as in the one at issue in this case, Agent Manners stated that he had seized "two trash bags easily accessible from the rear yard." But, unlike here, in the earlier affidavit, Agent Manners also stated that the trash bags were found in "a typical location for trash pick-ups and consistent to the location of neighbors."

After reviewing this evidence and hearing argument from counsel, the district court denied Tate's request for an evidentiary hearing pursuant to *Franks*. The court agreed with Tate that the evidence obtained from the trash investigation was the warrant's only real information linking Tate's residence to the alleged illegal activity and therefore that the statements regarding the trash investigation were essential to a finding of probable cause. But the court observed that even if Tate could prove that Agent Manners had scaled the fence, entered the backyard, and seized Tate's trash from a closed container just outside his back door, Tate still could not prevail on his motion to suppress the evidence. The court based this conclusion on the fact that Agent Manners' statement in the affidavit that the trash bags were "easily accessible from the rear yard of 709 North Longwood Street" was "literally true," even under Tate's description of how the events supposedly occurred. Focusing on the affirmative language that Agent Manners used, the district court explained that it had only

two meanings, and at least one did not implicate an unconstitutional investigation: "[O]ne possibility is that the agent was in the yard where he retrieved the two black trash bags. . . . The alternative interpretation is that the bags came from the rear yard, which does not tell me anything about where the person who retrieved the bags physically was located when he retrieved the bags." The court concluded therefore that with this ambiguity, Agent Manners could not have misled the state judge. The district court summarized that "however clever, ambiguous, ingenious, wrongheaded, whatever words one wants to use to describe Agent Manners' articulation of this trash investigation, [the state judge who issued the warrant] was entitled to give [the affidavit] a lawful, reasonable interpretation, and he did." Accordingly, the court found that Tate could not meet the *Franks* requirement that a statement in the affidavit was intentionally or recklessly false or misleading. It therefore denied the motion to suppress without holding a *Franks* hearing.

Tate now appeals this decision, arguing that in light of the deliberately *deceptive omission* from the affidavit, he made the necessary substantial preliminary showing for a *Franks* hearing.

II

In challenging the integrity of Agent Manners' affidavit, which was used to procure the search warrant for Tate's residence, Tate contends specifically that, in describing an investigation of trash bags that "were easily accessible from the rear yard of 709 North Longwood Street," Agent Manners intentionally or recklessly omitted material facts and that with the inclusion of the omitted facts, the affidavit would not have supported a finding of probable cause. He asserts that the facts omitted were that Agent Manners trespassed to obtain Tate's trash and seized the trash when it had not been abandoned, in violation of *California v. Greenwood*, 486 U.S. 35 (1988).

The government allows that Agent Manners' affidavit "certainly could have been clearer" but contends that his statement about where the trash was located "was neither false nor intentionally misleading." The government argues that Tate relies on a "strained" reading of the affidavit that the district court rejected and urges this court not to "disturb the district court's sound ruling on appeal." The government

does not, however, address the allegedly omitted facts except to characterize them as only "a theory."

*Franks v. Delaware* held that under limited and carefully circumscribed circumstances, a defendant may challenge an affidavit offered to procure a search warrant against the defendant. The Supreme Court articulated the right as follows:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks*, 438 U.S. at 155-56. The Court's holding rests on the principle that probable cause under the Fourth Amendment must be demonstrated by a "truthful showing," *id.* at 165 (quotation marks and emphasis omitted), but it pointed out immediately that a "truthful showing" must be understood in the practical context of procuring search warrants:

> This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true. . . . Because it is the magistrate who must determine independently whether there is probable cause, it would be an unthinkable imposition

upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or reckless[ly] false statement, were to stand beyond impeachment.

*Id.* (citations omitted).

The Court made clear that there is a "presumption of validity" with respect to warrant affidavits and that to overcome that presumption, a defendant must allege "deliberate falsehood" or "reckless disregard for the truth" and include with the allegations "an offer of proof." *Id.* at 171. The defendant must not only point out specifically the portion of the affidavit that is claimed to be false and give reasons why it is false, but he must also furnish "[a]ffidavits or sworn or otherwise reliable statements of witnesses" or explain their absence. *Id.* And, allegations of "negligence or innocent mistake are insufficient." *Id.* The burden of making the necessary showing is thus a heavy one to bear.

Moreover, in this case, Tate does not challenge the accuracy of any affirmative statement made by Agent Manners in his affidavit. Rather, Tate argues that Agent Manners *omitted* facts, thereby making the affidavit deceptive. When relying on an omission, rather than on a false affirmative statement, Tate's burden increases yet more. *See United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990). As we explained in *Colkley*, an affidavit offered to procure a search warrant "cannot be expected to include . . . every piece of information gathered in the course of an investigation." *Id.* at 300. And because every piece of information cannot be expected to be included, the very process of selecting facts to include for the demonstration of probable cause must also be a deliberate process of omitting pieces of information. Certainly, such intentional omissions do not satisfy the requirement of *Franks*. As we stated in *Colkley*, "If, as the district court held, this type of 'intentional' omission is all that *Franks* requires, the *Franks* intent prerequisite would be satisfied in almost every case." *Id.* Accordingly, merely showing an intentional omission of a fact from a warrant affidavit does not fulfill *Franks*' requirements. *See id.* at 301; *see also United States v. Shorter*, 328 F.3d 167, 170-71 (4th Cir. 2003).

To satisfy the *Franks*' intentional or reckless falsity requirement for an *omission*, the defendant must show that facts were omitted

"with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading." *Colkley*, 899 F.2d at 300 (internal quotation marks omitted). Stated otherwise, the omission must be "*designed to mislead*" or must be made "in *reckless disregard of whether [it] would mislead.*" *Id.* at 301.

Thus, in order for Tate to be entitled to a *Franks* hearing on his challenge of Agent Manners' affidavit, he is required to make a substantial preliminary showing that Agent Manners omitted material facts that when included would defeat a probable cause showing — i.e., the omission would have to be "necessary to the finding of probable cause," *see Shorter*, 328 F.3d at 170 (internal quotation marks omitted) — and that the omission was designed to mislead or was made with reckless disregard of whether it would mislead, *see Colkley*, 899 F.2d at 301. And this showing must include a detailed "offer of proof." *Franks*, 438 U.S. at 171.

## III

In this case, Tate made a showing that clearly described the nature of Agent Manners' omissions; he gave reasons for why he considered the omissions to be deliberately deceptive and material; and he proffered evidence in support of his position, including affidavits. *See Franks*, 438 U.S. at 171. The question remains whether his showing was substantively sufficient to entitle him to a *Franks* hearing, and this is a question of law for us to review *de novo. See United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir. 2005); *United States v. Martin*, 332 F.3d 827, 833 (5th Cir. 2003).

Tate's showing reduces to the claim that in order for Agent Manners to have investigated Tate's trash, which provided the essential basis for demonstrating probable cause, Agent Manners would have had to jump the fence which enclosed Tate's backyard, trespass on Tate's property, and search trash that was stored in a container that had not been abandoned for pick-up. He supports these claims with the following proffered facts: (1) the trash investigation took place, according to Agent Manners, on a Thursday; (2) the trash was not to be picked up until the following Saturday; (3) on non-trash-pick-up days, the practice followed at Tate's residence was to store trash in a trash container near the rear steps of the house which was not acces-

sible from public areas without trespassing; (4) the backyard of Tate's residence, in which the trash container was kept on non-trash-pick-up days, was fenced with a gate that was always locked; (5) Agent Manners stated in a similar affidavit to obtain a search warrant offered *in another case* two months earlier that he had seized "two trash bags easily accessible from the rear yard" *and* that the trash bags were found in "a typical location for trash pick-ups and consistent to the location of neighbors"; (6) in the affidavit *in this case*, the language was similar but did not include the last clause that the bags were found in "a typical location for trash pick-ups and consistent to the location of neighbors"; and (7) the result of Agent Manners' trash search was necessary to a showing of probable cause in this case.

If Tate is correct about his proffered facts, Agent Manners did not omit only insignificant details of the trash investigation. He omitted important facts and circumstances that, if true, were essential to the constitutionality of the trash investigation. The proffered facts tend to show that Agent Manners may have violated Tate's reasonable expectation of privacy because the trash was not out at the curb for collection on the date of Agent Manners' search but rather in a container near the rear steps of the home. Also, based on Agent Manners' affidavit from another case involving a trash search, where he described the trash as being at the typical location for pick-up, Agent Manners may have deliberately omitted that language from his affidavit in this case. Tate argues that the inclusion of the statement in the previous affidavit that the trash was found in "a typical location for trash pick-ups and consistent to the location of neighbors" reveals that Agent Manners *knew* the requirements for a trash search and therefore that his *omission* of this information from the current affidavit, when coupled with the evidence that the trash was likely not out at the curb for pick-up at the relevant time, indicates an intentional and knowing falsehood on the part of Agent Manners that was designed to mislead the issuing judge.

Although it is certainly true that the trash bags at issue here may in fact have been in a location consistent with their having been abandoned for collection or that Agent Manners may not have included the more descriptive sentence he used in the earlier affidavit out of an exercise of caution resulting from not knowing the "typical location" for trash collection in the area, Tate's evidence at this stage is suffi-

cient to constitute a "substantial *preliminary* showing" of a deceptive omission, as required by *Franks*. 438 U.S. at 155 (emphasis added).

The government, essentially parroting the district court's conclusions, argues that Tate has failed to show that Agent Manners knowingly or recklessly omitted material facts because a "reasonable, literal reading" of the affidavit is that "the officer was either in the yard when retrieving the trash or that the bags came from the yard." This may be a "reasonable, literal reading" of what was affirmatively stated. But the government's argument fails to respond to Tate's argument that, regardless of whether the affidavit as written is ambiguous, it deliberately omits material facts. If Tate's facts are correct, the affidavit omitted the important details that the officer was indeed present in the yard, that the trash had not been abandoned, and that the trash bags were seized in violation of Tate's reasonable expectation of privacy. *When an omission is involved*, the question is not whether the affidavit was "literally true," but whether Tate's offer of proof made a showing that the warrant affidavit omitted facts by design to mislead the issuing judge as to the constitutionality of the trash search that established probable cause. A "literally true" affidavit thus can be intentionally misleading if it deliberately omitted material facts which, when included, would defeat the probable cause showing and thus render false the original "literally true" affidavit.

Of course, the omitted facts must have been material. Agent Manners' alleged intent to mislead the issuing judge would be largely irrelevant if the issuing judge would have granted the search warrant even if the affidavit included the allegedly omitted information or excluded all reference to the trash investigation. In *Colkley*, we noted that an officer cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation. 899 F.2d at 300. Instead, to be material under *Franks*, an omission "must be such that its inclusion in the affidavit would defeat probable cause." *Colkley*, 899 F.2d at 301.

But here, the district court correctly recognized that the information obtained from the trash search — the marijuana residue — was essential to a finding of probable cause to search Tate's residence. We conclude, in addition, that if Tate's facts are true, the inclusion of the allegedly omitted information — that Agent Manners illegally

searched Tate's trash — would have defeated probable cause. If the trash investigation was conducted illegally, the facts derived from it would have to be stricken from the affidavit. *See United States v. Karo*, 468 U.S. 705, 719 (1984) (information obtained in violation of the Fourth Amendment would invalidate search warrant if it proved critical to establishing probable cause); *United States v. Gillenwaters*, 890 F.2d 679, 681-82 (4th Cir. 1989) (information illegally obtained must be excised from warrant affidavit).

Without the facts drawn from the trash investigation, the remaining contents of the affidavit would not have supported a finding of probable cause. What would have remained was evidence that 709 North Longwood Street was commonly known to store marijuana and that "[d]uring the month of December, [Agent Manners] received information that Mr. Davon Lee Tate . . . who lives at 709 North Longwood [was] selling illegal narcotics" from that location. The affidavit provided no details regarding the source or context of this information, and standing alone, such information surely was not sufficient for a judge to exercise his independent judgment on issuing a search warrant. *See Illinois v. Gates*, 462 U.S. 213, 239 (1983); *United States v. Wilhelm*, 80 F.3d 116, 119 (4th Cir. 1996).

Accordingly, we hold that Tate has carried his burden of making a substantial *preliminary* showing that Agent Manners knowingly and intentionally, or with reckless disregard for the truth, omitted a material statement in the affidavit he offered in support of the warrant to search Tate's residence. But we hasten to add — indeed we emphasize — that we express no opinion with regard to whether Tate will prevail at the evidentiary hearing, where he faces a higher burden of proof and will be required to prove his allegations by a preponderance of the evidence. *See Shorter*, 328 F.3d at 170. The extent of our holding here is (1) that the alleged omission in this case is the type that can constitute a "false statement" under *Franks*; (2) that the evidence of a false statement by omission and intent to mislead submitted by Tate meets the "substantial preliminary showing" requirement of *Franks*; and (3) that the facts omitted, if included, would defeat probable cause for the search of Tate's residence.

Accordingly, the judgment of conviction and sentence is vacated, and the case is remanded for a *Franks* hearing.

*VACATED AND REMANDED*