**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-4103

UNITED STATES OF AMERICA,

             Plaintiff - Appellee,

        v.

DEVON LAMAR MARION,

             Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.   James C. Dever III, Chief District Judge.  (5:11-cr-00338-D-1)

Submitted:  August 2, 2013          Decided:  December 4, 2013

Before GREGORY and FLOYD, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Terry F. Rose, Smithfield, North Carolina, for Appellant. Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Kristine L. Fritz, Assistant United States Attorneys, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

On November 1, 2011, a federal grand jury sitting in the Eastern District of North Carolina charged Devon Lamar Marion (Marion) with: (1) possession with intent to distribute more than twenty-eight grams of cocaine base (crack), a quantity of cocaine, and a quantity of marijuana, 21 U.S.C. § 841(a)(1); (2) possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A); and (3) possession of a firearm by a convicted felon, id. § 922(g)(1). Marion pleaded guilty to these offenses, and the district court sentenced him to concurrent 108 month terms of imprisonment for the § 841(a)(1) and § 922(g)(1) offenses, and a consecutive sixty month term of imprisonment for the § 924(c)(1)(A) offense. On appeal, Marion challenges: (1) the district court's denial of his motion to suppress evidence recovered pursuant to a search warrant; (2) the district court's denial of his request for a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978); and (3) the sentence imposed by the district court. We affirm.

I

Legal determinations underlying a district court's suppression rulings, including the denial of a Franks hearing, are reviewed by this court de novo, and factual findings

relating to such rulings are reviewed for clear error. United States v. Allen, 631 F.3d 164, 171 (4th Cir. 2011).

In June 2011, a confidential informant (CI) provided information to law enforcement authorities in Cumberland County, North Carolina concerning a drug dealer known as "Fat Rat." The information provided by the CI included, among other things, the following about "Fat Rat": (1) he used rental vehicles to distribute drugs in Fayetteville, North Carolina; (2) he had a blue car with blue wheels; and (3) he had a house in Hope Mills, North Carolina.

A search of a police database revealed that Marion was also known as "Fat Rat." When presented with a photograph of Marion by law enforcement authorities, the CI confirmed that "Fat Rat" and Marion were the same person.

"Using investigative techniques," the law enforcement authorities discovered a rental agreement in which Marion was listed as the renter of a 2011 Dodge Ram truck (the Dodge Ram). On the rental agreement, Marion listed his contact phone number as (910) 354-9476. A "reverse check" on the phone number revealed that the phone number (910) 354-9476 was a land line to a residence located at 612 Connors Cove (the Residence) in Hope Mills.

While under the surveillance of the law enforcement authorities, Marion, using the Dodge Ram, made several short

trips from the Residence in Hope Mills to known drug areas in Fayetteville. Each time Marion arrived at a known drug area, he stayed there only a short time before returning to the Residence.

On two separate occasions, the law enforcement authorities examined the trash at the Residence. Each time, the law enforcement authorities found multiple plastic baggies with ripped off corners. According to the law enforcement authorities, this evidence was consistent with the packaging and repackaging of controlled substances.

On July 6, 2011, Detective Joseph Herring (Detective Herring) of the Fayetteville Police Department observed the name "Fat Rat" stitched onto the head rests of a blue Chevrolet Caprice with blue rims parked in the driveway of the Residence. A DMV search revealed that the car was registered to Marion.

Based on this information, and information concerning Marion's previous conviction involving drugs, the law enforcement authorities prepared an affidavit (the Affidavit) and applied for a search warrant for the Residence, and the warrant was granted by a Cumberland County Magistrate (Issuing Magistrate) on July 17, 2011. The search warrant was executed the following day. During the search of the Residence, the law enforcement authorities recovered, among other things, 110.3

grams of crack; .9 grams of cocaine; 2.5 grams of marijuana; a Ruger .357 handgun; and $8,526 in United States currency.

Following his indictment, Marion moved to suppress the evidence recovered at the Residence on the basis that the search was not supported by probable cause. In the alternative, Marion sought a hearing pursuant to Franks, contending that the Affidavit included false and misleading statements and that the affiants purposefully omitted certain information. A United States Magistrate Judge recommended that both the motion to suppress and the request for a Franks hearing be denied. The district court adopted the magistrate judge's recommendation.

A

Marion contends that the search of the Residence was not supported by probable cause. In particular, he contends that the information contained in the Affidavit did not provide the Issuing Magistrate with a proper basis to conclude that evidence of a crime would be found at the Residence.

Subject to certain exceptions that are not applicable in this case, police officers must obtain a warrant to conduct a search or seizure at a residence. U.S. Const. amend IV; United States v. Kelly, 592 F.3d 586, 589 (4th Cir. 2010). An affidavit supporting a warrant that authorizes a search or seizure "must provide the magistrate with a substantial basis for determining the existence of probable cause" in light of the

totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 239 (1983). "[T]o establish probable cause, the facts presented to the magistrate need only 'warrant a man of reasonable caution' to believe that evidence of a crime will be found." United States v. Williams, 974 F.2d 480, 481 (4th Cir. 1992) (per curiam) (quoting Texas v. Brown, 460 U.S. 730, 742 (1983) (plurality opinion)). On appeal, we give "[g]reat deference . . . [to] a magistrate's assessment of the facts when making a determination of probable cause." Williams, 974 F.2d at 481.

The Affidavit presented to the Issuing Magistrate supported the finding of probable cause. The law enforcement authorities sought to search the Residence for evidence of controlled substances and drug trafficking activity. In support, the Affidavit described a previous conviction involving drugs. Moreover, the CI provided information concerning the drug trafficking activities of "Fat Rat," and he identified Marion as "Fat Rat" in a photograph provided by the law enforcement authorities. The CI's information was corroborated by, among other things, Marion's pattern of traveling from the Residence in a rented vehicle to known drug areas, staying for a short period of time before returning to the Residence, and the stitching of "Fat Rat" on the head rests of the Caprice Classic. Under the circumstances of this case, it is reasonable to suspect that a drug dealer would store drugs and items used in

- 6 -

the sale of drugs at a residence: (1) where he stays; (2) where he appears to maintain two automobiles, including one that is rented; (3) where law enforcement authorities recovered evidence of drug trafficking activity in the trash; and (4) where law enforcement authorities saw him on several occasions traveling from such residence to known drug areas, and then returning to such residence after a brief stay. Cf. United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988) (agreeing with other circuits "that the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence"). In short, the district court correctly determined that there was probable cause to search the Residence.

B

Alternatively, Marion contends that the Affidavit could not establish probable cause because: (1) the Affidavit was based on false and misleading information; and (2) the affiants purposefully omitted certain information. According to Marion, the Affidavit recklessly and materially misrepresented his criminal history, the phone number associated with the Residence, and the timing of the DMV search on the Chevrolet Caprice. Marion also posits that the Affidavit omitted the location of the trash or the manner in which it was collected by

the law enforcement authorities, and that the Issuing Magistrate likely was misled by a statement in the Affidavit regarding the procedure followed in searching the trash. Taken together, Marion argues these misstatements and omissions violate Franks and require invalidation of the search warrant and suppression of all evidence seized during the search of the Residence. Marion also argues that he was, at a minimum, entitled to a Franks hearing.

In Franks, the Supreme Court held that a "search warrant must be voided and the fruits of the search excluded" if a defendant establishes, by a preponderance of the evidence, that the affidavit supporting that warrant included false statements made "knowingly and intentionally, or with reckless disregard for the truth" and that those false statements were "necessary to the finding of probable cause" such that, "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." 438 U.S. at 155-56. A defendant is entitled to a hearing to pursue this relief if he makes a "substantial preliminary showing" that the affiant intentionally included false statements necessary to the finding of probable cause. Id. at 155.

A defendant bears a heavy burden to establish the need for a Franks hearing. United States v. Jeffus, 22 F.3d 554, 558

(4th Cir. 1994). With a claim that the affiant made the affidavit deceptive by omitting facts, the defendant's "burden increases yet more." United States v. Tate, 524 F.3d 449, 454 (4th Cir. 2008). In such a case, the defendant must show "that facts were omitted 'with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading.'" Id. at 455 (quoting United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990)). A claim that the affiant was negligent or made an innocent mistake is inadequate to obtain a Franks hearing. United States v. McKenzie-Gude, 671 F.3d 452, 462 (4th Cir. 2011). The preliminary showing "must be more than conclusory and must be accompanied by a detailed offer of proof." Colkley, 899 F.2d at 300 (citation and internal quotation marks omitted). Consideration of the omitted information must "be such that its inclusion in the affidavit would defeat probable cause." Id. at 301. Thus, a defendant is not entitled to a Franks hearing if, once the false statements are excised and the omitted information is inserted, probable cause still exists. Franks, 438 U.S. at 171-72.

In this case, even excluding all controverted statements from the Affidavit and including the omissions that Marion alleges, the Affidavit would support the Issuing Magistrate's finding of probable cause. Accepting Marion's arguments, the Affidavit would still have included the following: (1) Marion

had a previous conviction (albeit not a felony conviction) involving drugs; (2) the CI provided the law enforcement authorities with information regarding an alleged drug dealer known as "Fat Rat"; (3) the CI said that "Fat Rat" usually rented vehicles in which to deliver drugs in the Fayetteville area; (4) the CI indicated that "Fat Rat" has a home in Hope Mills; (5) the CI said that "Fat Rat" had a blue car with blue wheels; (6) a search of a police database revealed that Marion was known as "Fat Rat"; (7) the CI identified Marion as "Fat Rat" in a photograph provided by the law enforcement authorities; (8) Marion rented the Dodge Ram; (9) the law enforcement authorities saw the Dodge Ram parked at the Residence; (10) the law enforcement authorities saw a blue Chevrolet Caprice with blue rims and the words "Fat Rat" stitched in the head rests at the Residence; (11) on several occasions, Marion exited the Residence, got into the Dodge Ram, and drove to parts of Fayetteville known for illegal drug activity; and (12) on these occasions, Marion stopped for a short period of time in the known drug areas before returning to the Residence. Unquestionably, even including the additional information Marion claims was omitted, the Issuing Magistrate still would have had a substantial basis for finding probable cause that Marion was using the Residence as a drug storehouse. Thus, Franks does not require invalidation of the search warrant

- 10 -

or suppression of the fruits of the search of the Residence. Nor is Marion entitled to a <u>Franks</u> hearing.

II

We review sentences for procedural and substantive reasonableness under an abuse of discretion standard. <u>Gall v. United States</u>, 552 U.S. 38, 51 (2007). Miscalculation of the Guidelines range is a significant procedural error. <u>Id.</u> In assessing whether the district court has properly applied the Guidelines, we review factual findings for clear error and legal conclusions <u>de novo</u>. <u>United States v. Osborne</u>, 514 F.3d 377, 387 (4th Cir. 2008). We will "find clear error only if, on the entire evidence, we are left with the definite and firm conviction that a mistake has been committed." <u>United States v. Manigan</u>, 592 F.3d 621, 631 (4th Cir. 2010) (citation, alteration, and internal quotation marks omitted).

In preparation for sentencing, a United States Probation Officer (the Probation Officer) prepared a presentence report. Using a Cumberland County street price of crack of $1,200 per ounce, the Probation Officer converted the $8,526 recovered at the Residence into 201.43 grams of crack. In arriving at this figure, the Probation Officer divided 8,526 (the amount of cash seized) by 1,200 (the street price of an ounce of crack in Cumberland County) and then multiplied that amount, 7.105

- 11 -

(ounces), by 28.35 (the number of grams in an ounce). When this 201.43 grams was added to the other drugs recovered from the Residence, the resulting drug quantity placed Marion in a Base Offense Level of 32. With a three-level reduction for acceptance of responsibility, Marion's Total Offense Level was 29, which, when coupled with a Criminal History Category of III, produced an advisory sentencing range of 108 to 135 months' imprisonment for the § 841(a)(1) offense.

Marion argues that the district court erred in calculating the advisory sentencing range for his § 841(a)(1) offense by incorrectly calculating the amount of drugs attributable to him. In particular, he challenges the manner in which the district court converted the $8,526 in United States currency recovered at the Residence into a crack equivalent. The gist of Marion's argument is that the conversion of the $8,526 should have been to grams, not ounces, at a rate of $100 per gram, because there was no evidence presented at sentencing indicating what quantities and at what prices Marion sold crack. According to Marion, using 85.26 grams instead of 7.105 ounces would have reduced his base offense level by four levels.

At sentencing, the government need only establish the amount of drugs involved in an offense by a preponderance of the evidence. United States v. Cook, 76 F.3d 596, 604 (4th Cir. 1996). Moreover, "[w]here there is no drug seizure or the

- 12 -

amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance"; "[i]n making this determination, the court may consider, for example, the price generally obtained for the controlled substance."  United States Sentencing Commission, Guidelines Manual, § 2D1.1, cmt. (n.12) (2011).

Cash is properly converted to drug equivalents when it is part of the same course of conduct, either because it is the proceeds of drug sales or would be used to purchase more drugs in the future.  United States v. Hicks, 948 F.2d 877, 882-83 (4th Cir. 1991).  "A district court may properly convert cash amounts linked credibly to the defendant's purchase or sale of narcotics so long as the court does not engage in double counting of both the proceeds and the narcotics themselves." United States v. Sampson, 140 F.3d 585, 592 (4th Cir. 1998).

In this case, the government presented evidence at sentencing suggesting that Marion sold crack in large quantities instead of the small quantities typically sold by a street dealer.  The packaging and other evidence recovered at the Residence also suggested that Marion sold crack in large quantities instead of small quantities.  Based on this evidence, the district court did not clearly err when it converted the $8,526 to ounces of crack instead of grams.  See United States v. Kiulin, 360 F.3d 456, 461 (4th Cir. 2004) ("Thus, we hold

that a district court need not 'err,' on the side of caution or otherwise; it must only determine that it was more likely than not that the defendant was responsible for at least the drug quantity attributed to him."); United States v. Uwaeme, 975 F.2d 1016, 1019 (4th Cir. 1992) ("Neither the Guidelines nor the courts have required precise calculations of drug quantity.").

III

For the reasons stated herein, the judgment of the district court is affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED