**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-4317**

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

v.

TREMAYNE ANTWANE MITCHELL,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News.  Arenda L. Wright Allen, District Judge.  (4:16-cr-00083-AWA-LRL-1)

Argued:  December 7, 2017                                    Decided:  March 28, 2018

Before NIEMEYER and AGEE, Circuit Judges, and Paula XINIS, United States District Judge for the District of Maryland, sitting by designation.

Reversed and remanded by unpublished opinion.  Judge Xinis wrote the opinion, in which Judge Niemeyer and Judge Agee concur.

**ARGUED:**  Richard Daniel Cooke, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellant.  Nicholas Ryan Hobbs, HOBBS & HARRISON, PLLC, Hampton, Virginia, for Appellee.  **ON BRIEF:**  Dana J. Boente, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellant.

Unpublished opinions are not binding precedent in this circuit.

XINIS, District Judge:

The government appeals the district court's order granting Tremayne Antwane Mitchell's motion to suppress evidence seized by police officers during a search of Mitchell's apartment. For the reasons stated below, we reverse.

I

The afternoon of June 27, 2016,[1] police officers Zachary Lyons and Glenn Marshall were on routine patrol at Pinedale Manor apartments located in Newport News, Virginia. Pinedale Manor is a two-story garden style apartment complex. The apartment buildings overlook a common parking lot, with sidewalks running the length of each apartment building and directly in front of the apartment doors. The complex is not gated, and the parking lot and sidewalks are openly accessible to members of the public. Management at Pinedale Manor encouraged Newport News police to patrol the complex so as to combat the high incidence of drug-related crimes. Officers typically patrolled on foot and bicycle throughout Pinedale Manor.

On June 27, 2016 at about 2:49 p.m., Newport News Officers Lyons and Marshall were on bike patrol at the apartment complex. As Officer Marshall passed in front of apartment A6, he smelled the strong odor of burning marijuana. Officer Lyons, who was riding his bicycle on the grassy area between the sidewalk and parking lot, also smelled marijuana coming from A6. Both officers were trained and experienced in smelling raw and burnt marijuana.

---

[1] The district court's opinion states that these events took place on July 27, 2016. However, the record reflects that the investigation, executed search warrant, and arrest all occurred on June 27, 2016.

3

The officers then spent several minutes investigating the odor's source by separately walking the length of the first floor sidewalk and second floor landing of the apartment building. Each officer noted that the odor was strongest near A6, a street level apartment with the front door abutting the sidewalk. Officer Lyons sniffed the windowsill of A6's exterior screened window. Officer Marshall also smelled the exterior doorframe of A6's front door. Confident in the odor's source, Officer Lyons then knocked on A6's door.

When Mitchell opened the door, the officers immediately smelled "a stronger odor of marijuana come from [inside] the residence." Officer Lyons informed Mitchell and the other occupant, Sean Mitchell,[2] that the officers noticed a "problem" with the apartment window so as to peaceably draw the men outside. Once outside, the officers informed the men that they had smelled marijuana coming from the apartment. For officer safety and to guard against potential destruction of evidence, the men were kept outside, placed in handcuffs, and patted down. The officers asked for consent to search the apartment for narcotics, and when both men declined, Officer Lyons left to obtain a search warrant.

Officer Marshall, joined by another Newport News officer, stayed with the two men. The officers advised that although the men were not under arrest, they were detained and not free to leave. During the one-and-a-half hours it took Officer Lyons to obtain the search warrant, the two men and the officers stayed outside the apartment.

_____

[2] The district court's opinion repeatedly states that Tremayne Antwane Mitchell and Sean Mitchell are brothers. They are not. In fact, no record evidence suggests that the men are related.

4

Officer Lyons affirmed in the affidavit for the search warrant as follows:

> On June 27, 2016, at 1449 hours in the City of Newport News, Officer Lyons and Marshall were on bike patrol in the area of 749 Adams Drive. Officer Marshall rode past apartment A6 when he detected the odor of Marijuana coming from the apartment. When Officer Lyons rode past the window of the apartment[,] he also detected the odor of fresh marijuana. Both officers made contact with the residence [sic] and had them step out of the residence. Once both occupants stepped out Officer Lyons advised them of the situation and told them they were both detained for a narcotics investigation at 1450 hours. When the door to apartment A6 opened the strong odor of marijuana emitted from the apartment.

Based on this application, the local magistrate issued the warrant, finding that probable cause existed to believe that evidence of marijuana possession would be found in apartment A6, in violation of Virginia Code § 18.2-250.1. The execution of the search warrant revealed three partially burned marijuana cigarettes and a loaded semiautomatic firearm in Mitchell's bedroom. Mitchell was then charged in federal court with possession of a firearm after having sustained a felony conviction, in violation of 18 U.S.C. § 922(g)(1).

Mitchell moved to suppress the seized evidence, contending that the officers' sniffs of the exterior windowsill and door constituted a search in violation of his Fourth Amendment rights to be free from warrantless searches and seizures. Mitchell alternatively argued that even if the officers' "sniff" was not a search, the officers lacked probable cause to believe the Commonwealth's marijuana statute had been violated because the same statutory provision exempts marijuana possession for medical purposes.

At the suppression hearing, Officers Lyons and Marshall testified as to the events leading up to the search, and the court reviewed body camera footage that largely

5

corroborated the officers' testimony. Notably, the suppression hearing focused exclusively on whether the officers' sniffing the exterior window and door constituted a "search" cognizable under the Fourth Amendment. Mitchell had not challenged, and the district court did not address, the veracity of Lyons' affidavit submitted in support of the search warrant.

In a written opinion issued after the hearing, the district court granted Mitchell's motion to suppress, finding that the officers' sniffing the exterior window frame and doorjamb constituted a warrantless search in violation of Mitchell's Fourth Amendment rights. The district court then *sua sponte* determined that because the search warrant relied on Officer Lyons' knowing or reckless omission of material information as to the officers' sniffs, the warrant was obtained in bad faith, requiring suppression of the evidence. The district court so held even though Mitchell never requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), which sets forth the well-established procedure for mounting challenges to a search warrant predicated on false or misleading information. Nor did the district ever hold a *Franks* hearing to give Officer Lyons an opportunity to address his supposed lack of candor in "omitting details" from the warrant application.

The government timely appealed. We review *de novo* the district court's legal conclusions and findings of fact for clear error. *United States v. Davis*, 690 F.3d 226, 233 (4th Cir. 2012).

6

II

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A search or seizure has "undoubtedly occurred" when " 'the Government obtains information by physically intruding' on persons, houses, papers, or effects." *Florida v. Jardines*, 569 U.S. 1, 5 (2013) (quoting *United States v. Jones*, 565 U.S. 400, 406 n.3 (2012)). At its core, the Fourth Amendment protects "the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511 (1961). The area "immediately surrounding and associated with the home," the curtilage, is "part of [the] home itself for Fourth Amendment purposes." *Oliver v. United States*, 466 U.S. 170, 180 (1984).

However, "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *California v. Ciraolo*, 476 U.S. 207, 213 (1986) (quoting *Katz v. United States*, 389 U.S. 347, 351 (1967)). This is because the "touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.' " *Id.* at 211 (quoting *Katz*, 389 U.S. at 360). Accordingly, it is unreasonable to expect law enforcement officers "to shield their eyes when passing by a home on public thoroughfares." *Id.* at 213. Further, an apartment dweller maintains no expectation of privacy in the publicly accessible common areas of an apartment complex. *United States v. Jackson*, 728 F.3d 367, 373–74 (4th Cir. 2013). Law enforcement officers' use of their unenhanced senses in publicly accessible spaces, therefore, does not amount to a "search" under the Fourth Amendment.

7

It is beyond dispute that here, Officer Lyons and Marshall used their unenhanced sense of smell to investigate the source of the marijuana odor wafting through a public space. The officers, while biking on a walkway open to the public, smelled marijuana. They continued to investigate by sniffing in the general vicinity of A6 to confirm that the marijuana odor was indeed coming from that apartment. Once reasonably certain of the odor's source, the officers sniffed the window and door frames to confirm their suspicions, only to be met with a fresh whiff of marijuana when Mitchell opened the door. Critically, at no point did the officers use anything but their own noses to sniff in spaces open and accessible to the public. The officers' sniffs were decidedly not a search under the Fourth Amendment.

In holding to the contrary, the district court ignored decades of Supreme Court precedent rooted in the fundamental principle that law enforcement officers do no violence to the Fourth Amendment by gathering evidence in public places using their unenhanced senses. In *Taylor v. United States,* 286 U.S. 1 (1932), for example, several prohibition officers smelled the odor of whisky emanating from a garage. Based on that smell, the officers entered into the garage and seized 122 cases of whisky. *Id.* at 5–6. The Court emphasized that "officers may rely on a distinctive odor as a physical fact indicative of a possible crime," but nonetheless suppressed the evidence because the officers did not obtain a search warrant before entering the garage. *Id.* at 6.

Similarly, in *Johnson v. United States*, 333 U.S. 10 (1948), the Court noted that "a strong odor of burning opium" outside a hotel room door "might very well be found to be evidence of most persuasive character." *Id.* at 13–14. As in *Taylor,* the Court found

8

error not because officers gathered incriminating evidence by sniffing outside the defendant's hotel door, but because the officers entered and searched the hotel room prior to obtaining a warrant. *Id.* at 14–15.

More recently, in *California v. Ciraolo*, 476 U.S. 207 (1986), the Court reaffirmed that law enforcement officers' unenhanced observations from a vantage point available to "[a]ny member of the public," is not a search cognizable under the Fourth Amendment. *Id.* at 213. Although law enforcement officers purposely flew an airplane over the defendant's property to gain a better view of marijuana growing within a fenced area, the Court found that the officers had not conducted a "search" because all observations were made from "publicly accessible airspace." *Id.* at 213–15. In so holding, the Court soundly rejected respondent's contention that he maintained a "reasonable expectation of privacy" in a publicly observable area, or that the specific "law enforcement purpose" with which the officers made their observations rendered the fly-over a search. *Id.*; *see also Florida v. Riley*, 488 U.S. 445, 448–52 (1989) (officer's naked-eye observation of the respondent's greenhouse from a helicopter was not a search); *United States v. Dunn*, 480 U.S. 294, 303–04 (1987) (officers' act of shining a flashlight and looking into the defendant's barn from a nearby field was not a search); *United States v. Lee*, 274 U.S. 559, 563 (1927) (no search occurred when the agent used a searchlight to observe cases of liquor on deck before the defendant's boat was boarded).

The reasoning in *Ciraolo* is equally sound here. No principled distinction exists between an officer using his eyes as opposed to his nose to detect incriminating evidence. *Accord United States v. Humphries*, 372 F.3d 653, 658 (4th Cir. 2004); *United States v.*

9

*Cephas*, 254 F.3d 488, 494–95 (4th Cir. 2001). Stated simply, "a human sniff is not a search, we can all agree." *Florida v. Jardines*, 569 U.S. 1, 14 n. 2 (2013) (Kagan, J., concurring) ("If officers can smell drugs coming from a house, they can use that information; a human sniff is not a search, we can all agree.").

Although the district court acknowledged that the officers smelled marijuana in a manner no different than any member of the public, the district court nonetheless found the officers had conducted a search because they sniffed "with an investigatory purpose" and "with the power and authority to act on that purpose." The district court rested its decision on the Supreme Court's recent opinion, *Florida v. Jardines*, 569 U.S. 1 (2013). The district court misread *Jardines.*

In *Jardines*, the Court was asked to determine whether "the government's use of *trained police dogs* to investigate [the exterior of] a home and its immediate surroundings is a search within the meaning of the Fourth Amendment." *Id.* at 11–12 (emphasis added). The Court answered in the affirmative because "the officers' investigation took place in a constitutionally protected area," and was accomplished by an "*unlicensed physical intrusion*" through the use of a narcotics canine. *Id.* at 7–9 (emphasis added). Indeed, the Court expressly noted that an officer may do what "any private citizen might do" outside a home and be within constitutional limits. *Id.* at 8 (quoting *Kentucky v. King,* 563 U.S. 452, 470 (2011)). But using a "trained police dog to explore the area around the home in the hopes of discovering incriminating evidence" without a warrant is the very type of "unlicensed physical intrusion" prohibited under the Fourth Amendment.

10

*Id.* at 9. It is in this context that the Court noted the constitutionality of an officer's conduct was "limited not only to a particular area but also to a specific purpose." *Id.*

At base, the district court impermissibly expanded *Jardines* to prohibit officers in public areas from using their unenhanced senses to investigate criminal wrongdoing.[3] The officers repeatedly testified that their sniffs were no different than what any passerby could have done, whether that sniff was to catch a whiff of an illegal substance or something savory cooking on the stove. Nor was it disputed that the officers caught anew the smell of marijuana after they lawfully knocked on the door and Mitchell voluntarily opened it. Just as law enforcement officers are not compelled to "shield their eyes" from plainly visible criminal activity, *Ciaraolo*, 476 U.S. at 213, Officers Lyons and Marshall were not required to plug their noses as they passed Mitchell's apartment. Because the officers' sniff outside Mitchell's apartment was not a search, we must reverse.[4]

---

[3] Every case on which the district court relies involved a canine sniff. *See Jardines*, 569 U.S at 4; *United States v. Hopkins*, 824 F.3d 726, 732–33 (8th Cir. 2016); *United States v. Burston*, 806 F.3d 1123, 1125 (8th Cir. 2015); *People v. Burns*, 50 N.E.3d 610, 614 (Ill. 2016); *State v. Rendon*, 477 S.W.3d 805, 807 (Tex. Crim. App. 2015).

[4] The odor of marijuana alone provides probable cause to believe that evidence of marijuana possession would be found in Mitchell's residence. *See, e.g. United States v. Humphries*, 372 F.3d 653, 658 (4th Cir. 2004). Mitchell argues, however, that the Commonwealth's limited exception allowing citizens to possess marijuana for medical reasons, *see* Va. Code § 18.2-250.1, undermined the magistrate's probable cause finding. We reject this contention. "[O]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." *Illinois v. Gates*, 462 U.S. 213, 235 (1983); *see also U.S. v. Carpenter*, 461 F. App'x 539, 540 (9th Cir. 2011) ("The existence of the Compassionate Use Act ('CUA') and the Medical Marijuana Program Act ('MMPA') do not change the probable cause analysis. . . . [T]he police are not required to investigate the existence of affirmative defenses under the CUA or MMPA once probable cause has been established."). This is especially the case so long as

11

## III

As to the district court's *sua sponte* finding that Officer Lyons, in his affidavit, knowingly or recklessly misled the magistrate, here too the district court erred. Although not necessary to this Court's determination because we hold no constitutional violation occurred, the significance of the district court's error merits separate treatment.

It is well-settled that a "presumption of validity" attaches to a search warrant because a neutral, detached judicial officer must first find probable cause based on facts sworn in an affidavit. *See Franks v. Delaware*, 438 U.S. 154, 171 (1978). Generally, evidence seized upon the execution of a search warrant is shielded from suppression, even if later revealed that the warrant was constitutionally infirm. *Id.* at 164–65; *see also United States v. Leon*, 468 U.S. 897, 920–22 (1984). To overcome this presumption of the warrant's validity, a defendant must make a "substantial" preliminary showing that the affiant acted in bad faith by knowingly or recklessly misrepresenting or omitting facts essential to the warrant's issuance. *Id.* at 155–56. If the defendant makes such a showing, then he is entitled to a *Franks* hearing, during which the defendant bears the burden of demonstrating that the affidavit included false statements or omissions material to the probable cause determination. *Franks*, 438 U.S. at 171–72; *see also United States v. Clenney*, 631 F.3d 658, 663 (4th Cir. 2011). The defendant's burden is especially demanding at a *Franks* hearing "[w]here a defendant challenges the validity of a warrant based 'on an omission, rather than on a false affirmative statement.' " *United States v.*

marijuana possession is prohibited by federal law, without exception. 21 U.S.C. § 841(a)(1).

12

*Simpson*, 659 F. App'x 158, 160 (4th Cir. 2016) (per curiam) (quoting *United States v. Tate*, 524 F.3d 449, 454 (4th Cir. 2008)).  "[M]erely showing an intentional omission of a fact from a warrant affidavit does not fulfill *Franks*' requirements."  *Tate*, 524 F.3d at 455.  The defendant must also demonstrate the omission was with " 'the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading.' "  *Id.* (quoting *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990)).  If, upon weighing the evidence and testimony presented at the *Franks* hearing, the court finds that the defendant has met his burden, only then is suppression of the evidence warranted. *Clenney*, 631 F.3d at 663.

The district court turned this process on its head.  At no time did Mitchell seek a *Franks* hearing or make the requisite substantial showing.  Nor did the Court hold a *Franks* hearing or ask the parties to brief the propriety of suppressing the evidence in light of a validly executed warrant.  Furthermore, no record evidence supports the district court's finding that Officer Lyons' application knowingly or recklessly misled the magistrate.  The district court's abrogation of the procedures announced in *Franks* — which has been followed by district courts for forty years — was improper.

IV

Because the officers' sniffs outside the Appellee's apartment were not a search under the Fourth Amendment, the order of the district court granting Appellee's suppression motion is

*REVERSED AND REMANDED*.