**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 18-4213

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

BENITEZ AUGUARIUS MOODY,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia at Norfolk.  Henry Coke Morgan, Jr., Senior District Judge.  (2:16-cr-00124-HCM-DEM-1)

Argued:  December 13, 2018                    Decided:  July 29, 2019

Before MOTZ, AGEE, and RICHARDSON, Circuit Judges.

Affirmed by published opinion.  Judge Richardson wrote the opinion, in which Judge Motz and Judge Agee concurred.

**ARGUED:**  James R. Theuer, JAMES R. THEUER, PLLC, Norfolk, Virginia, for Appellant.  Daniel Taylor Young, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:**  G. Zachary Terwilliger, United States Attorney, Alexandria, Virginia, Sherrie S. Capotosto, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.

RICHARDSON, Circuit Judge:

After a jury convicted Benitez Auguarius Moody of federal drug and firearm offenses, he sought an evidentiary hearing to challenge a facially sufficient search warrant affidavit. Such hearings are called "*Franks* hearings," named for the Supreme Court's decision permitting them in *Franks v. Delaware*, 438 U.S. 154 (1978). In his request, Moody argued that a police officer's trial testimony contradicted her search warrant affidavit that had led to evidence used at his trial. The district court, however, refused to hold a *Franks* hearing, finding that Moody had failed to make the necessary threshold showing. We affirm.

## I.

On March 24, 2016, as part of a larger investigation into narcotics trafficking, police used a confidential informant to buy heroin from Moody, a suspected drug dealer. Later that evening, Portsmouth Police Detective Beth Shelkey applied for warrants to search Moody's home (1212 Lindsay Avenue) and vehicle (a black BMW). Shelkey's supporting affidavit described the investigation, including the controlled heroin purchase on March 24 as well as other drug transactions:

> During the past 6 months, this affiant and other members of the Portsmouth Police Department [Special Investigations Unit] have utilized Confidential Informants who have been up to and inside of 1212 Lindsay Ave Portsmouth, VA and purchased quantities of heroin and cocaine from MOODY. During the investigation controlled purchases have been conducted directly from 1212 Lindsay Ave Portsmouth VA and from a 2004 black in color BMW convertible displaying Virginia tags VLD-9617 reregistered to MOODY.
>
> . . . .

2

> Within the past 24hrs this affiant and other members of the Portsmouth Police Department utilized a Confidential Informant who placed a telephone call to MOODY asking to purchase heroin from MOODY. MOODY arranged to meet the Confidential Informant in a pre arranged location. During this controlled purchase, MOODY and other co-conspirators (two unidentified black females) were observed leaving from 1212 Lindsay Ave Portsmouth, VA and surveilled traveling to the pre arranged location and selling the Informant heroin. The heroin was recovered by members of the Portsmouth Police Department Special investigations Unit, field tested and resulted positive for heroin.

J.A. 446. A state magistrate issued the warrants that same day. The resulting searches uncovered four firearms, drugs, drug paraphernalia, and thousands of dollars in cash. Moody was ultimately indicted by a federal grand jury on multiple counts of drug possession with intent to distribute, drug distribution, and firearm offenses.

Moody chose to go to trial. The Government called one of the informants identified in the affidavit, who testified about her practice of buying drugs from Moody and recounted her controlled heroin purchase on March 24. The informant explained that she had arranged the drug purchase with Moody on the telephone and that two of his associates handled the physical transfer of drugs and money at the meeting location. In doing so, she acknowledged that Moody was not physically present for the drug delivery.

This informant's testimony was echoed by Detective Shelkey, who also testified that Moody was not physically present for the exchange. Shelkey explained that the informant told her that two unidentified women delivered the drugs. And she testified that the surveillance team told her that these women came from Moody's house. Shelkey also confirmed the informant's testimony that Moody "directed" the transaction remotely,

a fact that Shelkey herself knew from listening to the informant's phone call with Moody. J.A. 246–47.

After three days of testimony, the jury convicted Moody on three drug counts and two firearm counts but acquitted him on ten other drug charges. Only then did Moody seek a *Franks* hearing. In support of this request, he claimed that Shelkey's affidavit falsely stated that he was physically present for the drug exchange on March 24. The district court, without deciding whether the post-verdict motion was timely, denied Moody's request on the merits, concluding that he had failed to satisfy the preliminary showing needed to justify a *Franks* hearing.

After sentencing, Moody timely appealed the *Franks* ruling. We have jurisdiction under 28 U.S.C. § 1291. And as always, we review the district court's legal determinations de novo and its factual findings for clear error. *United States v. White*, 850 F.3d 667, 672 (4th Cir. 2017).

## II.

On appeal, Moody argues that a *Franks* hearing was required because Shelkey intentionally or recklessly made the false statement that Moody was physically present during the March 24 controlled purchase. He also raises several other arguments about the affidavit for the first time on appeal. After describing the legal framework, we address each in turn.

## A.

"An accused is generally not entitled to challenge the veracity of a facially valid search warrant affidavit." *United States v. Allen*, 631 F.3d 164, 171 (4th Cir. 2011). A

4

*Franks* hearing provides a criminal defendant with a narrow way to attack the validity of an affidavit. But to obtain the hearing, a defendant must make a "substantial preliminary showing" that (1) law enforcement made "a false statement"; (2) the false statement was made "knowingly and intentionally, or with reckless disregard for the truth"; and (3) the false statement was "necessary to the finding of probable cause." *White*, 850 F.3d at 673 (quoting *Franks*, 438 U.S. at 155–56). Given the "presumption of validity with respect to the affidavit supporting the search warrant," *Franks*, 438 U.S. at 171, a defendant must satisfy this "heavy" burden before a hearing takes place. *United States v. Tate*, 524 F.3d 449, 454 (4th Cir. 2008).

The first required showing, of falsity, cannot be conclusory and must rest on affidavits or other evidence. *See Franks*, 438 U.S. at 171; *United States v. Clenney*, 631 F.3d 658, 663 (4th Cir. 2011). As a result, the defendant cannot rely on a purely subjective disagreement with how the affidavit characterizes the facts. Rather, there must be evidence showing that the statements at issue are objectively false.

The second showing, requiring intentional falsity or reckless disregard for the truth, is just as demanding. An innocent or even negligent mistake by the officer will not suffice. *Franks*, 438 U.S. at 170; *United States v. Lull*, 824 F.3d 109, 115–16 (4th Cir. 2016). And here too, the defendant must provide facts—not mere conclusory allegations—indicating that the officer subjectively acted with intent to mislead, or with reckless disregard for whether the statements would mislead, the magistrate. *See United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990).

Finally, the defendant must show materiality—that is, that the false statements were "necessary to the finding of probable cause." *Franks*, 438 U.S. at 156; *United States v. Wharton*, 840 F.3d 163, 168 (4th Cir. 2016). A district court may not hold a *Franks* hearing where, after stripping away the allegedly false statements, the truthful portions of the warrant application would still support probable cause. This limitation reflects the ultimate purpose of *Franks*: "to prevent the admission of evidence obtained pursuant to warrants that were issued only because the issuing magistrate was misled into believing that there existed probable cause." *United States v. Friedemann*, 210 F.3d 227, 229 (4th Cir. 2000).

We note that the Federal Rules require certain motions, including a motion for a *Franks* hearing, to be made before trial "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(C); *see White*, 850 F.3d at 673. On appeal, the Government argues that the basis for making this preliminary showing was reasonably available to Moody before trial. Like the district court, however, we decline to decide whether the motion was timely and instead affirm on the merits.

**B.**

As in his motion below, Moody argues on appeal that Shelkey's affidavit falsely suggested that he was physically present for the controlled purchase on March 24. Because the informant and Shelkey both testified at trial that Moody arranged the transaction but was not physically present at the point of sale, Moody argues that the affidavit was false, and intentionally (or at least recklessly) so.

6

According to Moody, the following sentence from Shelkey's affidavit should be read to say that he was present for "selling" the heroin: "During this controlled purchase, MOODY and other co-conspirators (two unidentified black females) were observed leaving from 1212 Lindsay Ave Portsmouth, VA and surveilled traveling to the pre arranged location and selling the Informant heroin." J.A. 446. As the district court recognized, there is ambiguity here. The language says that three people (Moody and his two conspirators) did three things: left the house, traveled to the buy location, and sold heroin.

The affidavit lacks precision regarding whether all three people did all three things, or whether the activities were somehow divided up—a lack of precision that is perhaps understandable, as conspirators commonly split tasks among themselves. As a result, Shelkey could have intended at least three different meanings: (1) all three subjects were seen "leaving" the house, "traveling" to the transaction site, and "selling" the informant heroin, (2) all three subjects were seen "leaving" and "traveling," but only a subset (the two women) were seen "selling" the informant heroin; or (3) only the two women were seen "traveling" and "selling" the informant heroin, while Moody was only seen "leaving" with them. Only the first interpretation of the affidavit would clearly be false.[1] And, to be fair, the most natural reading of the affidavit does seem to say that Moody was at the scene of the transaction with the informant.

---

[1] Moody cites the testimony of Officer Roesch, a member of the SWAT team that executed the search, to suggest that Moody never even left the house. But Roesch's testimony says no such thing. He merely summarized the contents of an affidavit (Continued)

7

Yet warrant affidavits are "normally drafted by nonlawyers in the midst and haste of a criminal investigation." *United States v. Ventresca*, 380 U.S. 102, 108 (1965) (noting also that "[t]echnical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area"). They must be interpreted in a commonsense manner, neither held to the standard of what judges or lawyers feel they would have written if given the opportunity nor "judged as an entry in an essay contest." *United States v. Harris*, 403 U.S. 573, 579 (1971) (quoting *Spinelli v. United States*, 393 U.S. 410, 438 (1969) (Fortas, J., dissenting)). Mere imprecision does not, by itself, show falsity.

Even assuming that the affidavit was false, Moody has failed to show intentional falsity or a reckless disregard for the truth by Shelkey. Given the lack of precision in the statement at issue, we cannot reasonably infer that Shelkey acted with intent to mislead or with reckless disregard of whether the statements would mislead. *See United States v. Chavez*, 902 F.2d 259, 265 (4th Cir. 1990); *cf. United States v. Lyon*, 567 F.2d 777, 782 (8th Cir. 1977) (explaining that "ambiguity does not in every case constitute recklessness or intent to deceive"). Rather, it appears Shelkey honestly believed that Moody had left the house with the two women, who then delivered the drugs at his direction, and her

_____

supporting the criminal complaint against Moody. *See* J.A. 423–28. There was no foundation showing that Roesch was involved in the surveillance of Moody's house at all. Thus, this evidence could not show, one way or the other, whether Moody was seen leaving with the two women. And for her part, Shelkey testified that the surveillance team told her Moody had left the house. J.A. 292.

failure to specify that Moody was not present at the transaction reflected, at most, a lack of care.

Moreover, Moody's presence at the exchange was unnecessary to establishing probable cause. *See Wharton*, 840 F.3d at 168. The affidavit explained that Moody had organized the sale of heroin over the phone and that the runners delivering the heroin had left from his house. This established probable cause that instrumentalities or evidence of crime would be found in Moody's house, making Moody's presence for the delivery simply irrelevant. That shows any falsity was immaterial, while also suggesting that Shelkey had no motive to lie.

## C.

While Moody's *Franks* motion below only raised his lack of physical presence, he makes five additional arguments for the first time on appeal. These unpreserved claims of error are subject to the rigorous plain-error standard. *United States v. Olano,* 507 U.S. 725, 732 (1993) (noting that reversal under this standard requires an error that is plain and that both affects "substantial rights" and "seriously" affects "the fairness, integrity or public reputation of judicial proceedings" (citation omitted)). Moody's additional claims fail this rigorous test, and in fact would fail even without subjecting them to more stringent review.

First, Moody contends that Shelkey's affidavit falsely alleged that he dealt narcotics "directly" from his home at 1212 Lindsay Ave.[2] Shelkey stated in her affidavit: "During the investigation controlled purchases have been conducted directly from 1212 Lindsay Ave Portsmouth VA . . . ." J.A. 446. Moody maintains that this statement conflicts with Shelkey's trial testimony that Moody "would not meet people at the house but [] would go to different locations." J.A. 250.

Moody's claim of falsity turns on the whether a purchase "conducted directly" from the house necessarily means that the transfer of the drugs to the informant happened inside the house.[3] Moody did conduct the March 24 controlled purchase from the house in part: he arranged the transaction from his house by phone and sent his runners from there to deliver the drugs. But Moody might say that the adverb "directly" implies that the transfer to the informant (as opposed to the transfer from Moody to his co-conspirators) occurred inside the house.

Even if we strictly interpreted Shelkey's statement and found this statement to be false, there is still no evidence of her mental state or of materiality. This nuanced, after-the-fact reading does nothing to show Shelkey acted with intent to mislead or with

---

[2] The briefs suggest that Moody raised this contention before the district court, but without providing any citation. Our independent review of the record uncovered no instance of this claim being raised below. But again, Moody's prior failure to raise this issue makes no difference to the outcome of this case.

[3] It is unclear from the record whether other informants obtained drugs from Moody inside his house. It is clear that Moody did not keep all of his customers away from his home: another police informant was found inside Moody's house during the execution of the search warrant.

reckless disregard of whether the statement would mislead. And again, the precise location of the drug transfers was not important to a finding of probable cause necessary to search the house, because the simple fact is that Moody directed transfers and dispatched runners from there. This is enough to establish probable cause that evidence of the criminal conduct would be found in the house. *See United States v. Grossman*, 400 F.3d 212, 217–18 (4th Cir. 2005) (holding that there is probable cause to search the part-time residence of a defendant known to deal drugs, despite the lack of direct evidence that drugs are kept there). Contrary to Moody's conclusory contention that Shelkey's statement had the purpose "to mislead the magistrate into believing 1212 Lindsay Avenue was used for drug distribution," Appellant's Brief at 11, it is immaterial whether the informant received the heroin inside the house or at a nearby parking lot. We therefore reject Moody's claim that Shelkey's statement about conducting a controlled purchase from his house required a *Franks* hearing.

Second, Moody argues that Shelkey's affidavit deceptively described the state of the investigation by misrepresenting the number of controlled purchases and confidential informants as well as by falsely stating that an informant had been inside his home and observed drug paraphernalia. His primary evidence for this is that Shelkey's trial testimony only detailed the controlled purchase on March 24, which took place away from his house. *See id.*

11

This claim largely fails to show falsity. Shelkey testified about conducting other purchases from Moody, *see* J.A. 245,[4] and Officers Adams and Monteith testified about another informant who had been involved in the investigation, including by helping create a diagram of the interior of the house, but then stopped cooperating fully. While Moody makes the conclusory claim that there were no confidential informants who observed drugs, guns, or paraphernalia in the house, Appellant's Brief at 14, this second informant was in Moody's house during the search *that uncovered all three*. Moody has therefore failed to provide evidence beyond conclusory allegations to cast doubt on Shelkey's statements. *See United States v. McKenzie-Gude*, 671 F.3d 452, 462 (4th Cir. 2011) (noting that a mere contradiction of a warrant application does not require a *Franks* hearing); *United States v. Pace*, 898 F.2d 1218, 1227 (7th Cir. 1990) ("[The defendant's] self-serving statement in his affidavit that he never accepted bets on the number listed in the warrant affidavit is not sufficient to require a *Franks* hearing . . . ."). We thus reject Moody's claim here as well.

Finally, Moody argues that there were three "material omissions" from Shelkey's affidavit: (1) "the confidential informant had not been to the address and had never purchased narcotics at the address," (2) "Shelkey knew from the confidential informant

---

[4] The record might be read to suggest that the purchase on March 24 was the only *controlled* purchase from Moody. Even so, the probable cause determination does not turn on whether the other purchases of drugs by informants from Moody were controlled. *See generally* Appellee's Brief at 46 (noting that the affidavit showed that the "defendant made similar sales of cocaine and heroin to other informants at the Lindsay Avenue residence within the preceding six months").

that Mr. Moody was not present at a drug transaction on the same day as the execution of the affidavit," and (3) "the lack of reliability of the confidential informant." Appellant's Brief at 6–7. A defendant requesting a *Franks* hearing based on claims of omissions faces an even higher evidentiary burden than when he bases his claims on false statements. *Tate*, 524 F.3d at 454–55.

Moody's claims of material omissions, largely a repackaging of his claims of false statements that we have already rejected, do not satisfy this standard. As to the first alleged omission, it was irrelevant whether the testifying informant had been inside Moody's home or bought narcotics there since both the affidavit and trial testimony point to the participation of other informants (one of whom was in his house during the raid). As to the second, we have already explained that Moody's lack of physical presence at the exchange on March 24 was unnecessary to the probable cause determination. And as for the last alleged omission, Moody has provided no basis for his claim that Shelkey's affidavit omitted anything about the testifying informant's reliability.

\* \* \*

A defendant must meet a high bar before he may challenge the veracity of a facially valid search warrant affidavit. Each of Moody's arguments fails to clear that bar. We therefore conclude that the district court properly rejected his motion for a *Franks* hearing. Accordingly, the judgment of the district court is

*AFFIRMED*.