**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 19-4077**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RICHARD TODD HAAS,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Robert E. Payne, Senior District Judge. (3:16-cr-00139-REP-1)

Argued: October 29, 2020                           Decided: January 27, 2021

Before WILKINSON, HARRIS, and RICHARDSON, Circuit Judges.

Affirmed in part, vacated in part, and remanded by published opinion. Judge Richardson wrote the opinion, in which Judge Wilkinson and Judge Harris concurred.

**ARGUED:** William Jeffrey Dinkin, WILLIAM J. DINKIN, PLC, Richmond, Virginia, for Appellant. Heather Hart Mansfield, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** G. Zachary Terwilliger, United States Attorney, Alexandria, Virginia, Brian R. Hood, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

RICHARDSON, Circuit Judge:

Richard Haas was convicted of attempted sex trafficking of a minor and three child-pornography offenses. He argues on appeal that the district court erred in denying a *Franks* hearing to challenge the veracity of law enforcement's declarations in two warrant affidavits. *See Franks v. Delaware*, 438 U.S. 154 (1978). He also contends that the district court wrongly permitted the attempted-trafficking count to go to the jury and incorrectly applied two Guideline enhancements during his sentencing. We affirm Haas's convictions. But we vacate his sentence because one of those enhancements, a four-level increase under § 2G2.1, should not have applied.

## I.    Background

### A.    The sex-crimes investigation

In 2016, Haas arranged a sexual encounter with Sarah[1] at his home after seeing her Backpage.com advertisement. This was not the first time that Haas had met Sarah. More than four years earlier, Haas had paid Sarah for sex several times, but the two had lost touch. The last time Haas had seen Sarah, he told her that he liked younger women and he "wanted to talk more about it and see if [Sarah] was interested in that the next time [they] m[]et." J.A. 622.

So when Haas met up with Sarah in 2016, he asked if she remembered their last conversation and was interested in "what he was talking about last time." J.A. 625. Sarah told Haas that she was interested. But little did Haas know, Sarah had agreed because she

---

[1] We refrain from providing a surname to protect her privacy.

intended to report Haas to law enforcement. Haas then opened his laptop and showed her photos of young children performing sexual acts in various stages of undress. Sarah testified that she saw "probably like 1,500" photos and that the children in the photos appeared to range from age 4 to 12. J.A. 627.

After meeting with Haas, Sarah reached out to the FBI and was put in contact with Special Agent Gonzalez. The agent met with Sarah, and she told him about her encounters with Haas. To corroborate her statement, the FBI asked her to identify a photograph of Haas and of his residence. The agents also verified that the phone number Sarah provided was linked to Haas and that he had owned the house that Sarah identified until it was later sold. Sarah told Agent Gonzalez of her prior prostitution-related conviction, and Agent Gonzalez knew that she was on probation, although he did not know for what offense.

After meeting with the FBI, Sarah told Haas a made-up "story about a woman [she] knew in Baltimore" who "had children that she could bring down from Baltimore for [Haas] to photograph and . . . engage in sexual things with." J.A. 634. After hearing this story, Haas texted and called Sarah several times to ask about procuring the young girls to create child pornography.

Sarah then arranged to meet Haas in person so that he could give her $100 to obtain nude pictures of the children from Baltimore. But on her way to that meeting, Sarah was pulled over by Henrico County police officers. When she saw the police car's flashing lights, she pulled into the grocery store parking lot where she had planned to meet Haas, jumped out of her car, and ran to his car. Haas gave her $100, and she promised that she would get the photos soon.

3

Upon returning to her car, Sarah was met by the police, who asked for her driver's license. Sarah's license had been suspended so she gave the officer her sister's name instead of her own. She received three tickets in her sister's name. A week later, Sarah met with the FBI agent again. During this meeting, she admitted that she had lied to the Henrico County police about her identity and "that she wanted to take care of it." J.A. 143–44. The agent reached out to the Henrico County Police Department and arranged to drive Sarah to her hearing a few days later so that she could resolve the false-identity issue. At that hearing, Sarah was charged with providing false information to a law-enforcement officer and held in jail without bail.

When Sarah was released two weeks later, the FBI gave her a recording device to record her phone calls with Haas. She recorded two phone calls. During the second call, the two discussed getting the two young girls from Sarah's "friend" from Baltimore:

HAAS: You need to f****** hook it up, girl.

[Sarah]: Alright, awesome, we can do that.

HAAS: Need to hook it up, man.

[Sarah]: What's the um, what's the range that you like?

HAAS: Um, it ain't so much me as it is like other, but you know, around like exactly what you were saying before, you know, give or take a little bit, you remember what you were talking about before? That is, that is like the most.

[Sarah]: I remember I said I had a 12 and a 8[.]

HAAS: Yeah that's, the lower side of that is definitely better.

4

J.A. 371. Shortly after this phone call, the FBI learned that Haas had been accused of molesting an eleven-year-old girl. The investigation was cut short, and Agent Gonzalez prepared an application for a search warrant seeking evidence of child-pornography offenses.

**B.     The search warrant, search, and proceedings below**

The search warrant for Haas's residence and personal vehicle was approved by a federal magistrate judge. And the agents executed the warrant at Haas's home the next day, seizing two laptops. Haas had left for work, so the agents traveled to his workplace and found him sitting in his work truck. Haas was arrested on a state warrant for the sexual battery of the eleven-year-old, and during a protective sweep of the truck, an agent saw a laptop bag containing a third laptop. Agent Gonzalez then obtained a second search warrant for the truck and seized the laptop. Neither warrant affidavit included information about Sarah's criminal history or recent encounter with the Henrico County police.

After Haas was indicted, he sought to suppress the evidence seized from the truck. He argued that the second search warrant lacked probable cause and requested a *Franks* hearing. The district court held a probable-cause hearing, during which Agent Gonzalez testified. Based on this hearing, the district court issued an opinion denying both the suppression motion and the request for a *Franks* hearing. *See United States v. Haas*, No. 3:16CR139, 2017 WL 1712521, at *1 (E.D. Va. May 2, 2017). Although the district court found that the warrant lacked probable cause of a nexus between Haas's home laptop, on which Sarah had seen child pornography, and Haas's work laptop found in the truck, it held

5

that the evidence collected under the warrant should not be suppressed under *Leon*'s good-faith exception. *Id.* at *10.

More than a year later, Haas filed a second motion to suppress and request for a *Franks* hearing, this time challenging the first search warrant for his residence and personal vehicle. The two warrant affidavits were identical, except that the second mentioned the laptop seen in the truck during Haas's arrest. *Compare* J.A. 45–81 (second warrant affidavit), *with* J.A. 273–309 (first warrant affidavit). The district court held another hearing and issued an opinion that again denied suppression and a *Franks* hearing. *United States v. Haas*, No. 3:16CR139, 2018 WL 4040171, at *1 (E.D. Va. Aug. 23, 2018).

After a trial, the jury convicted Haas of attempted sex trafficking of a minor, receipt of child pornography, and possession of child pornography. Considering Haas's Guidelines range, the district court imposed a life sentence. Haas timely appealed, and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2).

## II. Discussion

### A. *Franks* hearing

Haas twice moved for a *Franks* hearing to determine whether facts about Sarah's credibility were intentionally or recklessly omitted from the first and second warrant affidavits. The district court denied both motions, relying on the same analysis for both warrants. *See, e.g.*, *Haas*, 2018 WL 4040171, at *1–2 (written denial of second motion). We assess de novo whether Haas provided enough evidence to be entitled to a *Franks* hearing. *United States v. Tate*, 524 F.3d 449, 455 (4th Cir. 2008).

6

"A *Franks* hearing provides a criminal defendant with a narrow way to attack the validity" of a search-warrant affidavit. *United States v. Moody*, 931 F.3d 366, 370 (4th Cir. 2019). Along with affirmative false statements, "*Franks* protects against omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate." *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990) (emphasis omitted).

To obtain a *Franks* hearing, a defendant must make a "substantial preliminary showing" to overcome the "presumption of validity with respect to the affidavit supporting the search warrant." *Moody*, 931 F.3d at 370 (citations and quotation marks omitted); *see also Franks*, 438 U.S. at 171 (defendant's "attack must be more than conclusory and must be supported by more than a mere desire to cross-examine").[2] When a defendant relies on an omission, this heavy burden is even harder to meet. *Tate*, 524 F.3d at 454–55. In that situation, a defendant must provide a substantial preliminary showing that (1) law enforcement made an omission; (2) law enforcement made the omission "knowingly and intentionally, or with reckless disregard for the truth," and (3) the inclusion of the omitted evidence in the affidavit would have defeated its probable cause. *Colkley*, 899 F.2d at 300–01. If the district court finds that a defendant has made this threshold showing, it must hold a *Franks* hearing to develop evidence on the affidavit's veracity. *Id.* at 301. If after the

---

[2] Both of the district court's opinions purport to deny Haas's request for a *Franks* hearing, *Haas*, 2017 WL 1712521, at *1; *Haas*, 2018 WL 4040171, at *1–2, but they incorrectly state the burden of persuasion as "preponderance of the evidence," rather than "substantial preliminary showing," *Haas*, 2017 WL 1712521, at *7; *Haas*, 2018 WL 4040171, at *2. This error is subject to a harmlessness review under Federal Rule of Criminal Procedure 52.

hearing the defendant establishes "perjury or reckless disregard" by a preponderance of the evidence and shows that the inclusion of the omitted evidence would defeat the probable cause in the affidavit, "the search warrant must be voided and the fruits of the search excluded." *Franks*, 438 U.S. at 156; *see also Colkley*, 899 F.2d at 300–01.

Several of Haas's claims fail at the outset. Haas contends that the warrant affidavits omitted three categories of information: (1) information about Sarah's criminal history, including that she was on probation during the relevant time, was arrested for providing a false name to Henrico County police during a traffic stop while working on Haas's case, and had previously been arrested for a prostitution-related offense; (2) information about Sarah's reliability as a confidential informant, including the (unidentified) outcomes that resulted from her prior work with the FBI; and (3) corroborating evidence of her claim that she saw child pornography on Haas's laptop.

Haas's second argument about Sarah's reliability is "conclusory" because he does not identify specific information, such as the actual outcomes of Sarah's prior work as an FBI informant, that was omitted from the affidavits. *Franks*, 438 U.S. at 171. And conclusory allegations fail. *See Moody*, 931 F.3d at 371 (A "defendant must provide facts—not merely conclusory allegations—indicating that the officer subjectively acted" improperly.). If these unidentified "outcomes" were known and consistently showed that Sarah provided misinformation, they could have formed the basis to grant a *Franks* hearing. But without that, we conclude that Haas's second argument did not warrant a *Franks* hearing.

8

The third purported omission, additional corroborating evidence, fails for a more fundamental reason. At its core, this is an argument that the warrant affidavits *lacked* probable cause, not that the omitted material was intentionally or recklessly omitted and would have *negated* probable cause. There was no additional corroborating evidence that the affiant could include that would have "defeat[ed] probable cause for arrest," as corroborating evidence could have only strengthened the affidavit. *Colkley*, 899 F.2d at 301. Instead, Haas is arguing that the affidavits did not present enough evidence to meet the probable-cause standard. But the presence (or absence) of probable cause is not the proper subject of a *Franks* hearing.

This leaves us with Haas's first category of omissions: various aspects of Sarah's criminal history, including her encounter with the Henrico County police.[3] But "[a]n affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation" so the "mere fact" that the agent did not include every piece of information known about Sarah in the affidavits "does not taint the[ir] validity." *Id.* at 300–01 (quoting *United States v. Burnes*, 816 F.2d 1354, 1358 (9th Cir. 1987)). Instead, to satisfy *Franks*'s intentionality prong, law enforcement must have omitted the information to mislead the magistrate judge or in reckless disregard of whether it would be

---

[3] Haas tries to argue that the agent omitted the fact that Sarah was on probation for the commission of a *felony* offense from the warrant affidavits. But when he swore out the affidavits, the agent only knew that Sarah was on probation for a prior offense; he did not know whether it was a misdemeanor or felony because he had not yet conducted a criminal background check. So the most Haas can claim that the agent should have included in the affidavits is the fact that Sarah was on probation for an unidentified offense during the time of the investigation.

misleading. *Tate*, 524 F.3d at 455; *Colkley*, 899 F.2d at 301. An officer acts with reckless disregard when she fails to inform the magistrate of facts she subjectively knew would negate probable cause. *Miller v. Prince George's Cnty.*, 475 F.3d 621, 627 (4th Cir. 2007). And the mere fact that information was omitted from an affidavit cannot alone show recklessness or intentionality. *United States v. Shorter*, 328 F.3d 167, 171 (4th Cir. 2003).

Haas relies on our decision in *United States v. Lull*, 824 F.3d 109 (4th Cir. 2016).[4] There law enforcement used an informant to make a controlled buy from the defendant. *Id.* at 111–12. At the end of the deal, the informant failed to return $20 of the buy money. *Id.* at 112. The officers searched him and found the missing $20, at which time law enforcement "immediately determined that the informant was not reliable and terminated" his informant status. *Id.* Law enforcement did not "think it would be an ethical thing to do, to use someone as a confidential informant knowing full well [he] had stolen from" them. *Id.* (alteration in original). Later that evening, the informant was arrested on a felony charge of obtaining property under false pretenses. *Id.* Right after the arrest, the case investigator submitted an affidavit to get a search warrant for Lull's residence, relying in part on the buy, but failed to disclose the informant's actions. *Id.* at 112–13.

After Lull challenged the affidavit, the district court held a *Franks* hearing. *Id.* at 114. The district court found that the investigator's omission of the incident did not satisfy *Franks*'s intentionality requirement and denied the motion to suppress. *Id.* We reversed.

---

[4] Although *Lull* applied the higher preponderance-of-the-evidence standard because we were addressing a *Franks* motion to suppress, its principles still guide us.

*Id.* at 120. We determined that the investigator was reckless in omitting the relevant information about the informant's credibility, crediting four facts established during the *Franks* hearing:

> (1) the decisiveness with which the Sheriff's Office acted in discharging and arresting the informant;
> (2) [the affiant's] knowledge of the consequences of the informant's crime;
> (3) the temporal proximity of the arrest to the decision to omit the information from the affidavit; and
> (4) the obvious impact of the informant's misconduct on any assessment of his reliability.

*Id.* at 116.

The district court properly found *Lull* distinguishable. Our case differs in four important respects. First, although Sarah's lie to the Henrico County police occurred in temporal proximity to the Haas investigation, the lie did not concern the investigation itself. By contrast, in *Lull*, the informant's lie about the missing $20 concerned the controlled buy that his testimony was to establish. *See Lull*, 824 F.3d at 116 (crediting "the obvious impact of the informant's misconduct on any assessment of his reliability"). Second, *Lull*'s holding hinged on the informant's dishonesty to the warrant affiant himself, while here there is no evidence that Sarah was anything but honest to the agent about the false-identity incident. In fact, Sarah came clean to the agent the next time she saw him and expressed that she wished to resolve things with the Henrico County police. Third, Sarah's misconduct did not cause the FBI to determine that she was unreliable and discharge her from her duties as an informant, as the Sheriff's Office did in *Lull*. *See Lull*, 824 F.3d at 112; *id.* at 116 (crediting "the decisiveness with which the Sheriff's Office acted in discharging and arresting the informant"). And last, the agent did not submit the first

11

warrant affidavit to the magistrate judge until a month and a half after Sarah's encounter with the Henrico County police, unlike the investigator in *Lull* who submitted the affidavit on the same day that the informant was terminated and arrested. *Id.* at 116 (crediting "the temporal proximity of the arrest to the decision to omit information from the affidavit"). This gave the agent more time to evaluate Sarah's credibility after the incident and before filing the warrant affidavits.

Haas also argues that we should find that the agent acted at least recklessly in omitting Sarah's criminal history from the affidavits because a "reasonable officer" would have known that the omission of witness credibility information violated clearly established precedent. But that is not the test for determining whether an officer has acted recklessly in omitting information from a warrant affidavit, and Haas provides no precedent to the contrary. The Supreme Court has held that "[a]llegations of negligence . . . are insufficient" to require a *Franks* hearing, *Franks*, 438 U.S. at 171, and our caselaw has considered the affiant's subjective state of mind in assessing this prong, *see Colkley*, 899 F.2d at 301 ("The most that the record here reveals about Moore's failure to include the photospread information is that he did not believe it to be relevant to the probable cause determination."). Haas presented no evidence that the agent subjectively knew that his failure to include Sarah's criminal history in the warrant affidavits would mislead the magistrate, and indeed, the record itself points to the opposite conclusion. *See* J.A. 143–44 (explaining that he did not include Sarah's encounter with the Henrico County police in the affidavits because he "didn't know [he] was obligated to include it"). And nothing

12

about Sarah's unrelated criminal history so undermined her credibility that we otherwise question the agent's subjective intent.

Because Haas failed to make a substantial preliminary showing that the agent acted with the requisite intent in omitting Sarah's criminal history from the warrant affidavits, we affirm the district court's denial of Haas's requests for a *Franks* hearing.[5] As we resolve this case at the first prong of the *Franks* analysis, we need not consider whether the purported omissions were material to the affidavits' probable cause.

### B. Motion for judgment of acquittal

At the close of the evidence at trial, Haas moved for an acquittal on all counts. The district court denied the motion, noting for the attempted-trafficking count that "there is clearly a credibility question that stands between conviction and acquittal. If the jury believes [Sarah], then there's ample evidence to convict. If they do not believe her, then they may acquit him." J.A. 837–38. The jury found him guilty, and Haas now appeals the denial of his motion for acquittal on the attempted-trafficking count, which we review de novo. *United States v. Wolf*, 860 F.3d 175, 194 (4th Cir. 2017).

A jury's guilty verdict must be upheld if, "viewing the evidence in the light most favorable to the government, substantial evidence supports it." *Id.* (quoting *United States v. Kiza*, 855 F.3d 596, 601 (4th Cir. 2017)). "[S]ubstantial evidence is evidence that a

---

[5] We also affirm the district court's denial of suppression based on the *Leon* good-faith exception. The good-faith exception to the Fourth Amendment's exclusionary rule does not apply to warrants issued based on deliberately or recklessly false affidavits. *United States v. Leon*, 468 U.S. 897, 914 (1984). But because we have held that neither warrant was issued based on a deliberately or recklessly false affidavit, this exception does not apply, and Haas's argument to the contrary fails.

reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc). A defendant contending that there was insufficient evidence to support his guilty verdict "must overcome a heavy burden." *Wolf*, 860 F.3d at 194 (quoting *United States v. Hoyte*, 51 F.3d 1239, 1245 (4th Cir. 1995)). So "[r]eversal for insufficient evidence is reserved for the rare case where the prosecution's failure is clear." *Id.* (quoting *United States v. Ashley*, 606 F.3d 135, 138 (4th Cir. 2010)).

Haas was charged with "knowingly attempt[ing] to recruit, entice, solicit and obtain by any means" a person, knowing or in reckless disregard of the fact that she was younger than age eighteen and would "be caused to engage in a commercial sex act" in violation of 18 U.S.C. §§ 1591 and 1594. J.A. 475. To sustain this attempted-sex-trafficking-of-a-child conviction, the government must have proven that (1) Haas knowingly attempted to recruit, entice, obtain, or solicit by any means a person, (2) Haas knew or recklessly disregarded that the person was under the age of eighteen and would be caused to engage in a commercial sex act, and (3) the defendant's conduct was in or affected interstate commerce. Haas only challenges the sufficiency of the evidence on the first element, attempt.

To convict a defendant of attempt, the government must prove beyond a reasonable doubt that the defendant (1) had "culpable intent" to commit the substantive crime and (2) took a "substantial step towards completion of the crime that strongly corroborates that intent." *United States v. Engle*, 676 F.3d 405, 419–20 (4th Cir. 2012). Accepting that he possessed the "culpable intent," Haas argues that his conduct did not constitute a

14

"substantial step" in furtherance of sex trafficking a minor. A substantial step "need not be the last possible act" toward the crime's commission but must be more than "[m]ere preparation for the commission of a crime." *United States v. Pratt*, 351 F.3d 131, 136 (4th Cir. 2003). While words and discussions might be considered preparations for most crimes, the very nature of a sex-trafficking-of-a-minor violation—recruiting, enticing, and soliciting a minor—depends on the use of words and discussions. *Engle*, 676 F.3d at 423. So while the line between attempt and preparation is fact-intensive, speech alone will often constitute a substantial step in furtherance of a § 1591 violation that is strongly corroborative of culpable intent. *See id.*

A jury could conclude that Haas's words and discussions stepped well over that line. Through his discussions with Sarah, Haas "recruit[ed]," "entice[d]," and "solicit[ed]" individuals whom he believed were under the age of eighteen knowing that they would be caused to engage in a commercial sex act. § 1591; *cf. United States v. Clarke*, 842 F.3d 288, 297–98 (4th Cir. 2016) (explaining that "communications with an intermediary aimed at . . . enticing . . . a minor to engage in sexual activity fit within [the] common understanding of a criminal attempt" (quoting *United States v. Roman*, 795 F.3d 511, 517 (6th Cir. 2015))). He contacted Sarah multiple times to ask if she knew of any children he could photograph, and upon hearing of the fictitious Baltimore children, expressed interest in obtaining photos of them and procuring them to make child pornography. Haas later gave Sarah $100 to procure nude pictures of the children and, in a recorded phone call, urged Sarah to "definitely hook [a trip to Baltimore to get the children] up, man, I'm serious" and "[g]et me some pictures too, man, because I can like set it up to where we can

15

make some money beforehand," J.A. 371; *see also id.* ("[T]he lower side of [8 and 12] is definitely better."); J.A. 372 ("[H]ook that s*** up, dude, and make some money, man.").

Haas's words strongly corroborated his intent to recruit, entice, or solicit children to engage in commercial sex acts. And so there is no doubt that substantial evidence supported his attempt conviction.

## C. Sentencing Guidelines enhancements

The district court applied two Guideline enhancements that Haas challenges on appeal. The first was a four-level enhancement under § 2G2.1(b)(1)(A) because one of the fictitious minors Haas attempted to traffic had "not attained the age of twelve years." The second was a five-level enhancement under § 4B1.5(b) for being a repeat and dangerous sex offender against minors based on his repeated sexual abuse of the eleven-year-old girl. When evaluating a district court's Guidelines calculations, we review factual findings for clear error and legal conclusions de novo. *United States v. Strieper*, 666 F.3d 288, 292 (4th Cir. 2012).

### 1. Definition of "minor" in § 2G2.1

A defendant convicted of attempted sex trafficking receives a four-level enhancement under the Guidelines if the offense "involved a minor who had [] not attained the age of twelve years." U.S.S.G. § 2G2.1(b)(1). The district court applied this enhancement because one of the fictitious minors Haas solicited Sarah to procure was eight years old. Haas argues that the enhancement applies only if the minor was real, not fictitious.

The application note to § 2G2.1(b)(1) defines "minor" to mean:

16

(A) an individual who had not attained the age of 18 years;

(B) an individual, whether fictitious or not, who a law enforcement officer represented to a participant (i) had not attained the age of 18 years, and (ii) could be provided for the purposes of engaging in sexually explicit conduct; or

(C) an undercover law enforcement officer who represented to a participant that the officer had not attained the age of 18 years.

U.S.S.G. § 2G2.1 cmt. n.1 (paragraph breaks added). The government argues that this case falls within subparagraph (B), with Sarah standing in the shoes of law enforcement as a de facto law enforcement agent. In the alternative, the government contends that subparagraph (A) applies because a fictitious minor can support applying the enhancement when the offense of conviction is *attempted* sex trafficking. The district court refused to apply subparagraph (B) but found that subparagraph (A) applied because Haas was "attempting to obtain a real child." J.A. 1007–08.

But the definition of "minor" in subparagraph (A) does not include fictitious individuals. We interpret the Guidelines "using standard canons of statutory interpretation," *United States v. Medina-Campo*, 714 F.3d 232, 236 (4th Cir. 2013), which caution against interpreting this provision as the district court did. The canon against superfluity, *see Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 110–11 (2012), warns against reading the term "individual" in subparagraph (A) to include both real and fictitious individuals, as this would render the modifying phrase "fictitious or not" in subparagraph

17

(B) superfluous.[6]  And the canon of *expressio unius est exclusio alterius* (expressing one item of an associated group excludes another left unmentioned) advises that when language is used in one part of a Guidelines provision and not in another, the exclusion is presumed intentional.  *United States v. Curtis*, 934 F.2d 553, 556 (4th Cir. 1991); *see also Tarrant Reg'l Water Dist. v. Herrmann*, 569 U.S. 614, 629 (2013).  Because the term "individual" is modified in subparagraph (B) by the phrase "fictitious or not," while the same modifier is not present in subparagraph (A), we must presume that the exclusion was intentional. *See United States v. Fulford*, 662 F.3d 1174, 1181 (11th Cir. 2011).  The government's argument that an attempt crime demands a different reading of this provision is not supported by the Guidelines' text.  Accepting that argument would require us to rewrite the Guidelines to bring about a certain result.  We, like other circuits that have addressed this issue, decline to do so.  *See id*. at 1178; *United States v. Vasquez*, 839 F.3d 409, 413 (5th Cir. 2016).

Likewise, the term "law enforcement officer" in subparagraph (B) does not naturally include private citizens working with law enforcement.  If the Guidelines Commission had wanted this term to be read broadly, it was more than capable of including such language. But without broadening language, we construe terms in the Sentencing Guidelines according to their ordinary meaning.  *Chapman v. United States*, 500 U.S. 453, 461–62

---

[6] If the term "individual" unambiguously included fictitious victims, we would accept that plain meaning.  *See Kawashima v. Holder*, 565 U.S. 478, 486–87 (2012).  But it does not.  *See Individual*, 7 OXFORD ENGLISH DICTIONARY 880 (2d ed. 1989) ("A human being, a person.").

18

(1991). The term 'law-enforcement officer' means a "person whose duty is to enforce the laws and preserve the peace." BLACK'S LAW DICTIONARY 1058 (11th ed. 2019); *id.* (defining "law enforcement" as "[p]olice officers and other members of the executive branch of government charged with carrying out and enforcing the criminal law"); *see also Officer*, MERRIAM-WEBSTER 861 (11th ed. 2011). So because the ordinary meaning of the term 'law enforcement officer' does not include private-citizen agents with no semblance of official authority, we cannot read this provision to encompass Sarah's conduct.

As a result, because neither subparagraph (A) or (B) of the application note defining "minor" for § 2G2.1 encompass a situation in which a private citizen represents that a fictitious child could be provided to engage in sexual conduct, the district court erred in applying this enhancement.

### 2. Repeat-offender enhancement in § 4B1.5

A five-level enhancement is applied "[i]n any case in which the defendant's *instant offense of conviction* is a covered sex crime, neither § 4B1.1 nor subsection (a) of this guideline applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct." U.S.S.G. § 4B1.5(b) (emphasis added). Haas argues that this enhancement was improperly applied in his case because only one of his convictions was a "covered sex crime" and the others were not.

Under the definition of "covered sex crime" provided by U.S.S.G. § 4B1.5, Haas's attempted-sex-trafficking-of-a-minor conviction, 18 U.S.C. § 1591, is a "covered sex

19

crime," but his child-pornography offenses are not.[7]  But Haas argues that the Guidelines first fail to identify which offense is the "instant" offense and then fail to address how to handle multiple offenses of conviction when some are covered and others are not.  Because of this ambiguity, he contends that the rule of lenity should apply.

First, the term "instant offense of conviction" unambiguously encompasses convictions on multiple counts.  Throughout the Guidelines, "[t]he term 'instant' is used in connection with 'offense,' 'federal offense,' or 'offense of conviction,' as the case may be, to distinguish the violation for which the defendant is being sentenced from a prior or subsequent offense, or from an offense before another court."  U.S.S.G. § 1B1.1 n.1(I) (emphasis omitted).  By negative inference, this means that the term is not used, as Haas suggests, to distinguish between a single "offense" of conviction and multiple "offense[s]" of conviction.  Circuit courts, including our own, have applied the term "instant offense," used in various parts of Chapter 4, where multiple charges are part of the same trial or guilty plea.  *See, e.g.*, *United States v. Summers*, 893 F.2d 63, 68 (4th Cir. 1990) (applying

---

[7] The application notes in this section define "covered sex crime":

> (A)      an offense, perpetrated against a minor, under (i) chapter 109A of title 18, United States Code; (ii) chapter 110 of such title, not including trafficking in, receipt of, or possession of, child pornography, or a recordkeeping offense; (iii) chapter 117 of such title, not including transmitting information about a minor or filing a factual statement about an alien individual; or (iv) 18 U.S.C. § 1591; or
> (B)      an attempt or a conspiracy to commit any offense described in subdivisions (A)(i) through (iv) of this note.

U.S.S.G. § 4B1.5 cmt. n.2.

enhancement under § 4A1.1, which includes the term "instant offense," to a case involving multiple gun and weapons convictions); *United States v. Coleman*, 964 F.2d 564, 565–66 (6th Cir. 1992) (not questioning that two convictions could constitute "the instant offense" under § 4B1.1). And an application note to § 4B1.5(a) contemplates that "the instant offense of conviction" can include "more than one count." U.S.S.G. § 4B1.5 cmt. n.3(B) ("In a case in which more than one count of the instant offense of conviction is a felony that is a covered sex crime, the court shall use the maximum authorized term of imprisonment for the count that has the greatest offense statutory maximum, for purposes of determining the offense statutory maximum under subsection (a)."); *cf.* 1 U.S.C. § 1 ("In determining the meaning of any Act of Congress, unless the context indicates otherwise-- words importing the singular include and apply to several persons, parties, or things."). We find no reason that the same phrase used in the next subparagraph should be interpreted differently. *Cf. Sorenson v. Sec'y of Treasury*, 475 U.S. 851, 860 (1986) ("The normal rule of statutory construction assumes that 'identical words used in different parts of the same act are intended to have the same meaning.'" (quoting *Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84, 87 (1934))).

And second, as long as one count is a covered sex crime, the "instant offense of conviction is a covered sex crime" and the enhancement applies. U.S.S.G. § 4B1.5(b); *see United States v. Buchanan*, 59 F.3d 914, 919–20 (9th Cir. 1995) (finding that although one count met the criteria in § 4A1.1 and one did not, both were part of a single "instant offense" under the Guideline); *cf. United States v. Dowell*, 771 F.3d 162, 164, 171 (4th Cir. 2014) (not questioning the application of this enhancement when the defendant was

21

convicted of both covered and non-covered offenses). Conviction of non-covered offenses in the same trial does not erase the covered sex offense.

Because the structure and context of the Guidelines dispel any ambiguity in the meaning of this term, there is no need to apply the rule of lenity as Haas suggests. *Reno v. Koray*, 515 U.S. 50, 65 (1995) ("The rule of lenity applies only if, 'after seizing everything from which aid can be derived,' we can make 'no more than a guess as to what Congress intended.'" (internal citations omitted)). One count of Haas's "instant offense of conviction" was a covered sex crime, so the enhancement applies, even though Haas was convicted of additional non-covered sex offenses.[8]

\* \* \*

The district court properly disposed of Haas's pretrial motions and correctly permitted the attempted-sex-trafficking-of-a-minor count to go to the jury. So we affirm Haas's convictions. But the district court erred in applying the four-level enhancement under § 2G2.1 during Haas's Guidelines calculations. So we vacate his sentence and remand for resentencing. The judgment below is thus

---

[8] The district court properly applied this five-level enhancement to the adjusted offense level for his receipt-of-child-pornography count, which is not a "covered sex offense." The Guidelines are applied sequentially. First, the base offense level and appropriate adjustments for each count are calculated under Chapter 2. U.S.S.G. § 1B1.1(a). Then the adjustments and considerations from Chapters 3 and 4 are applied to the highest adjusted offense level, and the defendant's Guideline range is determined by looking to Chapter 5. *Id.* Because Haas's receipt-of-child-pornography count had the highest adjusted offense level after the Chapter 2 adjustments were applied, the five-level enhancement was properly added to that number, even though the receipt count itself was not a "covered sex offense" that triggered application of the enhancement.

AFFIRMED IN PART, VACATED IN PART,
AND REMANDED.