**Concurring Opinion issued July 31, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————————

**NOS. 01-23-00876-CR**
**01-23-00877-CR**

———————————————

**ROBERT AARON ROSALES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 351st District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1682769 & 1682770**

---

**CONCURRING OPINION**

The trial court found that Officer Wilson made three false statements, and that he did so "with reckless disregard for the truth." These findings will follow Officer Wilson for the rest of his career—it's likely they will be disclosed to defense lawyers in every case where he is a witness, it's likely in future cases he'll be questioned

about them in a way that impugns his credibility, and it's possible guilty defendants will go free because of this. Yet he was not represented by counsel here. He was not given opportunities to explain some of his statements. He has no way to appeal and clear his name, ever.

The findings were not needed to decide the issue that was before the trial court. That means they are not important for any issue on appeal, meaning this Court has no authority to review them. How perverse that these findings—which will impact a police officer's career—are unreviewable *because* they were needless. That's why I take the unusual act of writing a concurring opinion to an opinion of the Court I authored: Things ought to be said that cannot come from the voice of the Court.

I will review the trial court's findings and show that they ought not have been made, that one is unsupported by the record, and that the finding that Officer Wilson acted "with a reckless disregard for the truth" is a misapplication of that term. Indeed, the rest of the trial court's findings prove the trial court believed his testimony that his insignificant errors were honest mistakes.

If it were procedurally possible to declare these findings an abuse of discretion, I would urge the Court to do so.

2

**The findings were legally pointless.**

*Franks v. Delaware*, 438 U.S. 154 (1978) makes clear it does not authorize free-ranging inquiries into the truthfulness of every statement in an affidavit. To just get a hearing, a defendant must make a substantial preliminary showing that statements in the affidavit 1) are false, 2) are either "deliberate falsehood[s]" or made with "reckless disregard for the truth," and 3) are necessary to the probable cause finding. 438 U.S. at 171. *Franks* is explicit that even if a defendant shows an affiant lied, if, after removing those deliberate falsehoods, "there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Id.* at 172.

The State argued, repeatedly, that the allegations of falsehoods in the appellant's motions did not justify a *Franks* hearing because the affidavit contained probable cause even without the supposedly false statements. After the *Franks* hearing, the trial court, Judge Natalia "Nata" Cornelio, found that even without the supposedly false statements the affidavit contained probable cause. The trial court could have denied the appellant's motion without a hearing. Or she could have held a hearing and denied the motion without additional findings about the falseness of the statements or Officer Wilson's mental state in making them.

If an appellate opinion contained needless statements, other courts would disregard them as *obiter dicta*—something said in passing of no precedential value.

3

But the trial court's needless findings here, while not precedential, will follow Officer Wilson.

**One supposedly false statement in the affidavit is ambiguous, and the other two seem to be innocent drafting errors.**

Defense counsel and the trial court focused particularly on one statement in the affidavit: "In Cybertip 49956945, a representative of Dropbox, Inc., reported that a Dropbox, Inc., user had uploaded approximately eight sexually explicit files which depicted suspected child pornography to the Dropbox, Inc., servers on May 27, 2019." The Cybertip, which was admitted at the hearing, showed an "incident time" on May 27, but fine print under that information said the "incident time" was set to 24 hours before Dropbox reported the incident. Upload logs admitted at the hearing showed the files were actually uploaded in January 2018 and January 2019.

Defense counsel and the trial court treated it as obvious that the complained-of sentence says that the files were uploaded on May 27. But, as the State correctly argued, the sentence is ambiguous as to what happened on May 27. Consider the following sentence:

Pete ate a pie Mary baked on May 27.

I think the most natural reading of that sentence is that Mary baked the pie on May 27. But if Pete explained that on May 27 he ate a pie that Mary had baked the day before, I wouldn't call him a liar based on that sentence.

In the same way, the complained-of sentence in the affidavit is ambiguous as to whether Dropbox made a report on May 27, or whether the files were uploaded on May 27. The most natural reading is that the files were uploaded on May 27, but that's not the only plausible reading.

At the *Franks* hearing, Officer Wilson conceded the sentence was "poorly worded," but said he had meant to explain "[the child pornography] was discovered or they put that offense date and time as May 27." Rather than accept Officer Wilson's clarification—which comports with the language of the sentence and the extraneous evidence—the trial court found that the statement was false and made with a reckless disregard for the truth.

The second statement the trial court found false regarded IP addresses. According to the affidavit Dropbox reported two IP addresses that had logged into the account: 2601:2c1:c100:5d0:6c4f:605b:fc52:d2f3 and 2601:2c1:c100:5d0:115f:34d4:994e:ca6a.

In the affidavit, Officer Wilson stated that another officer, Officer Corrales, sent a subpoena to Comcast "for the subscriber and billing information for IP Addresses 2601:2c1:c100:5d0:6c4f:605b:fc52:d2f3 and 2601:2c1:c100:5d0:115f:34d4:994e:ca6a on January 17, 2019 at 06:08:25 UTC and May 23, 2019 at 09:59:20

UTC, respectfully [sic]."[1] The affidavit then stated that Officer Wilson reviewed the information Officer Corrales got back from Comcast and it "indicated that the subscriber, service address, and billing address for IP Addresses 2601:2c1:c100:5d0: 6c4f:605b:fc52:d2f3 and 2601:2c1:c100:5d0:115f:34d4:994e:ca6a on said date" were assigned to a particular user.

At the *Franks* hearing, defense counsel introduced the subpoenaed information from Comcast, which connected IP address 2601:2c1:c100:5d0:115f: 34d4:994e:ca6a to the particular user on May 23, but which said the company had no records for who was using 2601:2c1:c100:5d0:6c4f:605b:fc52:d2f3 on January 17.

Officer Wilson explained that his statement in the affidavit that Comcast connected both IP addresses to the particular user on both of the queried dates was an "oversight" on his part. He was not asked how his oversight occurred. I will note that each of those IP addresses contains 30 characters that don't spell words or form inherently meaningful combinations. In writing this opinion, to ensure consistency I typed the IP addresses once and then used copy and paste for later uses. The record does not contain an explanation from Officer Wilson as to how this "oversight"

---

[1]    Writing or saying "respectfully" instead of "respectively" is a common and well-known usage error that does not cause genuine confusion. *See Compton v. State*, 148 S.W. 580, 581 (Tex. 1912) (where indictment alleged defendant stole multiple items from multiple victims "respectfully," "the word, 'respectively,' was clearly meant and intended. No one could be misled by this.").

occurred, but I suspect Officer Wilson simply copied and pasted a bit too much. The statement in the affidavit that the Comcast records related to "said date," not "said date*s*" supports this theory, and it supports Officer Wilson's testimony that he did not intend to include the second date.

Regardless of the cause of the error, the circumstances do not suggest any intent to mislead. Officer Wilson admitted it was an error. The false information was redundant, and less persuasive than the true information: The true information in the affidavit pinned the Dropbox account to an IP address assigned to the appellant's residence in May 2019, but the false information pinned the Dropbox account to an IP address assigned to the appellant's residence in January 2019, a more remote period. Moreover, pinning the Dropbox account to the appellant's IP address wasn't even needed for probable cause: It doesn't make more or less likely that child pornography would be in the Dropbox account at the time of a prospective search.

The third statement the trial court found false regarded record preservation. According to one paragraph in the affidavit, Officer Wilson "provided notice to Dropbox, Inc. to preserve the contents of the customer or individual subscriber/user account" associated the appellant's name and email address. At the *Franks* hearing, Officer Wilson testified that while he normally makes such requests he did not do so here because, as he stated elsewhere in the affidavit, he knew that Dropbox ordinarily preserved records for Cybertips without request.

7

Again, everything in the record strongly points at this being an honest error. The false information was less persuasive than the true information—if Dropbox ordinarily preserves its records, that's better than an officer making a preservation request that might not be granted. No one asked Officer Wilson directly why this false information was in this affidavit, but Officer Wilson testified that in his five years working child pornography cases he wrote between 20 and 45 warrant affidavits per month,[2] and he used forms to draft warrants. When part of a form appears as an artifact in a document where it's inappropriate, that's lamentable and something everyone should try to avoid, but it doesn't necessarily bear on the integrity of the drafter, particularly when the artifact doesn't further the purpose of the document.

**The errors in this affidavit do not show a reckless disregard for the truth.**

*Franks* is clear that even if an affidavit contains false statements that are necessary to probable cause, exclusion is appropriate only if the statements were deliberately false or made with a reckless disregard for the truth: "Allegations of negligence or innocent mistake are insufficient." 438 U.S. at 171. That's because *Franks*—a special application of the *Mapp* exclusionary rule—is about deterring police misconduct. *Herring v. United States*, 555 U.S. 135, 144–45 (2009)

---

[2] At the suppression hearing defense counsel was explicit he did not believe Officer Wilson intended to deceive, but rather that his errors were due to being "overwork[ed]."

8

(discussing *Mapp v. Ohio*, 367 U.S. 643 (1961) and *Franks*). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id.* at 144. *Franks* protects a defendant's right to an honest warrant affidavit; it does not create a right to a warrant affidavit free from honest error.

The trial court did not explain why she thought the misstatements in this affidavit rose to the level of "reckless disregard for the truth." She did not state she found Officer Wilson's testimony not credible; indeed, several of her findings require believing Officer Wilson's testimony. The extent of her finding was: "Considering the totality of the circumstances, including the three false statements made by Officer Wilson in his affidavit, the Court finds that the [sic] Officer Wilson demonstrated a reckless disregard for the truth in his affidavit. *Franks v. Delaware*, 438 U.S. 154 (1978)."

Judge Cornelio's finding that Officer Wilson demonstrated a reckless disregard for the truth doesn't hold up to scrutiny. First, one of the "false" statements wasn't false at all but an ambiguous sentence the trial court interpreted uncharitably. An ambiguous sentence is not "false" for *Franks* purposes. "[Affidavits] must be interpreted in a commonsense manner, neither held to the standard of what judges or lawyers feel they would have written if given the opportunity nor judged as an

9

entry in an essay contest. Mere imprecision does not, by itself, show falsity." *United States v. Moody*, 931 F.3d 366, 372 (4th Cir. 2019) (citations and quotations omitted) (rejecting *Franks* claim where complained-of sentence had multiple possible meanings, one of which was false).

The other two false statements do not meet the standard for reckless disregard for the truth. *Franks*'s requirement that a defendant show the false statement was made "knowingly and intentionally, or with reckless disregard for the truth" mirrors the "actual malice" standard used in defamation cases, where a plaintiff must show a false statement about a public official was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Nero v. Mosby*, 890 F.3d 106, 128 (4th Cir. 2018). Thus we use the common law definitions of "reckless disregard for the truth" and negligence found in constitutional contexts, rather than attaching out-of-context definitions from the Texas Penal Code.

The Texas Supreme Court summarized its federal counterpart's descriptions of "reckless disregard for the truth" in *Bentley v. Bunton*, 94 S.W.3d 561 (Tex. 2002). The standard focuses on the subjective state of mind of the speaker. *Id.* at 591. It requires more culpability than mere negligence; it "requires that a [speaker] have, subjectively, significant doubt about the truth of his statements at the time they are made." *Id.* at 596.

Officer Wilson admitted the statements about the IP address and record preservations requests were false. That does not mean, however, he had significant doubt about the truth of his statements at the time he made them. Rather, he testified that he did not know he made the statements in the affidavit. He had no mental state regarding the statements, they were included in error. On the facts here that's "mere negligence or an innocent mistake" that does not rise to the level of a *Franks* violation.

Of course, the trial court was not required to believe Officer Wilson's version of events. *See id.* ("self-serving protestations of sincerity" do not automatically defeat claim of reckless disregard). But we know from her findings that she believed him on this point; if she did not believe him, she would have found the false statements were made intentionally.[3] Her finding that the statements were made recklessly means she found Officer Wilson's testimony credible, she just applied the wrong legal standard to the fact she found.

The affidavit here was eleven pages. If that's typical for Officer Wilson's work—and it looks typical for this sort of case—at between 20 and 45 affidavits per month Officer Wilson was producing thousands of pages of writing per year, and I

---

[3]     At the conclusion of her oral findings, the trial court said she "hope[d]" that "in future warrants Officer Wilson is more careful and thorough with the representations that he makes." That comment is appropriate in response to accidental misstatements, not intentional falsehoods.

doubt he had a support staff helping him edit. With that sort of volume there will be errors. But so long as they are honest errors, they ought not result in unreviewable career-damaging credibility findings.

In fairness to the trial court, the definition of "reckless disregard" is seldom litigated in a detailed manner. But the lack of directly on-point caselaw should weigh against making needless findings.

Indeed, the *Franks* framework, if followed, should not create unreviewable findings. *Franks* is a narrow exception to the ordinary rule against attacking facially valid warrants. That's why it requires such a substantial evidentiary showing to get a hearing. It's understandable that in marginal cases trial courts will err on the side of holding hearings, but once it becomes clear that a claim fails, the spirit of judicial restraint should caution against making unnecessary findings. That's particularly true of credibility findings. Using a non-meritorious *Franks* motion to make unreviewable negative credibility findings about an unrepresented non-party who cannot respond or appeal is a misuse of judicial power.


Clint Morgan

Panel consists of Justices Rivas-Molloy, Guiney, and Morgan.
Morgan, J., concurring in the judgment.
Publish.

12